*Northern District*
No. 8082
CHARLES T. ROURKE, SR.,
ADMINISTRATOR OF THE
ESTATE OF CHARLES T. ROURKE, JR.
*v.*
THE TRAVELERS
INDEMNITY COMPANY

Argued: June 28, 1973   Decided: Nov. 19, 1973

Case tried to *Thomson, J.*, in the Central District Court of No. Essex. No. 48 of 1972.

*Present:* Cowdrey, P.J., Flaschner, C.J., Flynn, J.

**Flynn, J.** This is an action of contract brought by the plaintiff, Charles T. Rourke, Sr. as administrator of the estate of Charles T. Rourke, Jr. against the defendant, The Travelers Indemnity Company, to recover the sum of One Thousand Dollars ($1,000.00) from the defendant with interest for money allegedly payable to the plaintiff under the provisions of Coverage "D" of a Massachusetts motor vehicle policy issued by the defendant to the plaintiff.

The answer is a general denial; a defense that the plaintiff was and is entitled to coverage under Division 2, Coverage A of a Massachusetts motor vehicle policy which applied to the motor vehicle in which the plaintiff's intestate was riding at the time of the accident; and a defense that the motor vehicle in which the plaintiff's intestate was riding was covered by a Massachusetts motor vehicle liability policy issued by the Liberty Mutual Insurance Company with Personal Injury Protection benefits; that the plaintiff is entitled to recover from said Liberty Mutual Insurance Company for funeral expenses; that he is not entitled to recover them from the defendant because of an exclusion in the defendant's policy which provides that no such benefits

shall be paid if such expenses could otherwise have been payable under Division 2 of Coverage A of any other Massachusetts motor vehicle policy and that the policy of the Liberty Mutual did provide such benefits under Division 2 of Coverage A of said policy; the answer also sets forth a defense that the plaintiff had not complied with the terms of the policy.

The court found for the plaintiff in the sum of $1,000.00 with interest from July 7, 1971.

The case was tried on an Agreed Statement of Facts.

In substance, the Agreed Facts are as follows:

The plaintiff's intestate, Charles T. Rourke, Jr., while riding in a motor vehicle owned by and registered to David P. Crouch in Massachusetts, (under a Massachusetts registration,) was killed instantly on July 7, 1971 in a motor vehicle accident which occurred in New Hampshire. The accident happened during a ride which had begun in Massachusetts. The motor vehicle in which Rourke, Jr. was killed was insured at the time under a Massachusetts Motor Vehicle Policy issued by the Liberty Mutual Insurance Company to David P. Crouch and it was being operated at the time of the accident by David's son Paul Crouch with David's permission and the decedent Charles T. Rourke, Jr. was riding in

the motor vehicle at the time with the permission of both the owner and operator.

The decedent was a resident of Massachusetts at the time of the accident and resided at the home of his father, Charles T. Rourke, Sr. in Massachusetts.

The defendant (hereafter Travelers) had issued a Massachusetts Motor Vehicle Liability Policy covering a motor vehicle owned by and registered to said Charles T. Rourke, Sr., father of the decedent, in Massachusetts.

The Travelers Policy was a standard Massachusetts Motor Vehicle Policy and contained coverage in the amount of One Thousand Dollars ($1,000.00) under Coverage D (Automobile Medical Payments — optional coverage). The decedent as a relative and resident of his father's home qualified as an insured under said coverage.

The Liberty Policy issued on the Crouch car provided Coverage A, Divisions 1 and 2. Coverage A is compulsory. (Division 1 is Bodily Injury Liability — Statutory — The Commonwealth of Massachusetts. Division 2 is Personal Injury Protection — Statutory).

It did not provide any coverage under Coverage D (Automobile Medical Payments) which is an optional coverage. It was also a standard Massachusetts Motor Vehicle Policy.

The Liberty Policy contained the following provisions; Under Division 2 of Coverage A

— Personal Injury Protection Statutory is provided as follows:

> . . . . The Company shall pay in accordance with Chapter 670 of the Acts of 1970 of the Commonwealth of Massachusetts (the so called "No Fault" motor vehicle liability insurance law) . . . reasonable expenses incurred within two years from the date of the accident for necessary . . . . funeral expenses . . . .

(a) to or for each person who sustains bodily injury caused by accident . . . . while occupying the insured motor vehicle . . . .

The Travelers' Policy contained the following provisions under Coverage D.

"Coverage D — Automobile Medical Payments — (This coverage is optional).

The company will pay all reasonable expenses incurred within two years from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devises, and necessary ambulance, hospital, professional nursing and funeral services:

Division 1. To or for each insured who sustains bodily injury caused by accident.

(a) while occupying a motor vehicle, provided that with respect to a motor vehicle not owned by or furnished for the regular use of any insured under Division 1, this insurance shall apply only if the insured has, or reasonably believes he has, the

permission of the owner to use the motor vehicle and the use is within the scope of such permission. Provided, however, no expenses shall be payable under this coverage which are payable, or would be payable, but for the application of a deductible under Division 2 of Coverage A of this policy or any other Massachusetts motor vehicle liability policy.

It is further provided that no expenses shall be payable under this coverage which are or may be recovered by way of judgment or settlement in any action at law if such expenses would otherwise have been payable under Division 2 of Coverage A of this policy or of any other Massachusetts motor vehicle liability policy.''

Both Liberty and Travelers policies also contained the following provisions:

''CONDITIONS''

(Unless otherwise noted, conditions apply to all Parts and Coverage thereunder.)

(1) POLICY PERIOD, TERRITORY, PURPOSES OF USE. Except with respect to Coverage U and to Division 1 of Coverage A this policy applies only to accidents which occur and to loss sustained during the policy period, while the motor vehicle is within the United States of America, its territories or possessions, or Canada, or is being transported between ports thereof and, if an insured motor vehicle, is owned, main-

tained and used for the purposes stated as applicable thereto in the declarations. With respect to Coverage U, this policy applies only to accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada.''

Division 1 of Coverage A as aforementioned refers to Bodily Injury Liability —Statutory— The Commonwealth of Massachusetts which coverage is compulsory. Coverage U is mandatory coverage for Damages for Bodily Injury caused by Uninsured Automobiles.

Neither Coverage A Division 1 nor Coverage U are involved in the instant case.

It was agreed that the New Hampshire Death Statute does not allow any recovery for funeral expenses.

However, if the plaintiff could recover his funeral expenses from Liberty Mutual Insurance Company, the carrier on the Crouch car, it appears that he is barred from recovering the funeral expenses against the defendant Travelers policy.

The trial judge ruled that Personal Injury Protection (hereafter P.I.P.) insurance under Chapter 670 of the Acts of 1970 (hereafter Chapter 670), the constitutionality of which Act was upheld in *Pinnick* v. *Cleary,* 271 N.E. 2nd 592, does not have any extra-territorial effect.

Although this ruling may well be correct as

far as statutory P.I.P. coverage is concerned because the thrust of Chapter 670 appears to be directed thusly (infra), it is our conclusion that the issue involved herein is not whether or not statutory P.I.P. coverage, as a general proposition, has extra-territorial application, but rather whether or not there is extra-territorial coverage for P.I.P. benefits in the particular situation presented by the case at bar.

This is a case of first impression. Chapter 670 created an entirely new concept, the No Fault concept, as regards to the rights and liabilities of persons suffering personal injuries in motor vehicle accidents. Furthermore, but enacted subsequently to the date involved in the case at bar, and not relevant in any event to the instant situation, the no fault concept has since been extended to compulsory property protection insurance (See Chapter 978 of the Acts of 1971 as amended by Chapter 1079 of the Acts of 1971 now incorporated into Chapter 90 of the General Laws as Section 340).

Consequently, we are without authority at common law and are confined to an analysis and interpretation of the statute (Chapter 670 of the Acts of 1970) and of the provisions of the two motor vehicle insurance policies involved herein in order to decide the case at bar.

An analysis of Chapter 670 does indicate

several areas where the application of the Act is specifically limited to occurrences within this Commonwealth.[1]

Although Chapter 670 nowhere specifically states that P.I.P. is limited to accidents which occur on the ways of Massachusetts, Section 4 of the law (part of which is now Section 34M of Chapter 90) comes closest to such a statement where it does provide that the P.I.P. benefits are granted in lieu of damages otherwise recoverable by the injured person or per-

---

[1] For example, there are several provisions in the Act not pertinent to the case at bar. Section 2 of Chapter 670 which defines P.I.P. benefits and which was incorporated into Section 34A of Chapter 90, where it sets forth certain exclusions from P.I.P. benefits, states that insurers may exclude a person for P.I.P. benefits if such a person's conduct contributed to his injury in any of the three ways *while operating a motor vehicle in this Commonwealth* (1) while operating under the influence of alcohol or a narcotic drug (2) while committing a felony or seeking to avoid lawful apprehension or arrest by a police officer (3) with the specific intent of causing injury or damage to himself or others.

Section 4 of Chapter 670 also created an assigned risk P.I.P. plan (now Chapter 34N of Chapter 90) wherein it is specifically stated that the plan is applicable only to losses or expenses suffered, while the motor vehicle is *upon the ways of the Commonwealth or in any place therein to which the public has the right of access.* Section 5 of Chapter 670 also created the new Section 6D of Chapter 231 of the General Laws whereby certain limitations were placed upon the bringing of motor vehicle tort actions in which pain and suffering are involved. This section by its terms clearly applies only to bodily injuries, sickness or disease arising out of the ownership, operation, maintenance or use of a motor vehicle *within this Commonwealth.*

sons in tort *as a result of an accident occurring within this Commonwealth.*

Again in Section 4 of Chapter 670 (also now part of Chapter 90 Section 34M) where an exemption from tort liability is provided to the owner, registrant, operator or occupant of a motor vehicle to the extent to which P.I.P. benefits apply, it is specifically set forth that no such exemption from tort liability shall apply in case of an accident occurring *outside the Commonwealth.*

Yet, it is to be noted that Chapter 670 then immediately proceeds with the following language: ''However, if any person claiming or entitled to benefits under the Personal Injury Protection of a policy or bond insuring a vehicle registered in the Commonwealth bring, in such a case (i.e. in the case of an accident occurring outside the Commonwealth) an action in tort against the person or persons responsible for the operation of such a vehicle amounts otherwise due such a person under the provisions of Section 34A, shall not become due and payable until a settlement is reached or a final judgment is rendered in such a case and the amounts then due shall be reduced to that extent that damages for expenses and loss otherwise recoverable as a personal injury protection benefit are included in any such settlement of judgment.''

What type of situation did the legislature intend to encompass by the insertion of this

latter language in the No Fault Act? Chapter 90 Section 34A referred to therein is entitled Compulsory Motor Vehicle Insurance Definitions and, with the exception of the definition of "Personal Injury Protection provisions of a motor vehicle policy or motor vehicle liability bond" which definition was inserted into Section 34A by Chapter 670, contains definitions that have been in effect since the year 1925. The section defines "Certificate, Guest Occupant, Motor Vehicle, Motor Vehicle Liability Bond and Motor Vehicle Liability Policy."

The provisions of Section 34A that define a "Motor Vehicle Liability Bond" and a "Motor Vehicle Liability Policy" apply to the compulsory motor vehicle liability insurance required in this Commonwealth for many years with mandatory coverage of at least Five Thousand Dollars ($5,000.) on account of injury to or death of any one person and of at least Ten Thousand Dollars ($10,000.) on account of any one accident resulting in injury to or death of more than one person.

Such coverage, both by the terms of the statute and of the standard Massachusetts Motor Vehicle Policy used by carriers insuring vehicles registered in the Commonwealth, is categorically limited to cases arising out of the ownership, operation, maintenance or use of motor vehicles upon the ways of the Commonwealth or any place therein to which the public has a right of access. *Terrasi* v. *Pierce,*

304 Mass. 409. *Guzenfield* v. *Liberty Mutual Insurance Company*, 286 Mass. 133.

In order for owners or operators of Massachusetts registered motor vehicles to have liability insurance coverage, in the event of an accident beyond the territorial limits of this Commonwealth, insurance companies have traditionally provided optional Bodily Injury Liability Coverage other than Statutory (this is Coverage B on the standard Massachusetts Motor Vehicle Combination Policy.) In order to secure this coverage the insured must pay an additional premium.

Obviously, therefore, the language quoted from Section 4 of Chapter 670 where it refers to "amounts otherwise due such a person under the provisions of Section 34A" does not refer to the "five and ten compulsory" liability coverage that every motor vehicle registered in this Commonwealth is required to have because such coverage has no extraterritorial application, nor is it likely that the legislature could legally enact such a statutory provision which would apply to accidents occurring outside the territorial limits of this Commonwealth.

It follows, therefore, that the "amounts otherwise due such a person under the provisions of Section 34A" must refer to "Personal Injury Protection" provisions inserted into Chapter 90 Section 34A by Chapter 670.

It is apparent that the legislature recognized

that there might be certain conditions under which a person could get the benefit of P.I.P. coverage even though the injuries he suffered occurred in a motor vehicle accident outside Massachusetts where he would enjoy no immunity under Chapter 670.

Once again, while it is doubtful if our legislature would have the power to enact compulsory P.I.P. insurance legislation with extraterritorial implementation it appears that the legislature is in effect saying that if extraterritorial coverage for P.I.P. benefits has been provided, such as in the instant case, as a matter of contract between the insurer and the insured, then in the event of an out of state accident where a suit in tort has been brought, any amount recovered by the plaintiff shall be reduced to the extent of the P.I.P. benefit that the plaintiff is entitled to.

Although, under the New Hampshire Death Statute, there is no recovery provided for funeral expenses, the plaintiff would not be precluded from bringing an action in tort in New Hampshire under its statute for damages for wrongful death (State of New Hampshire Statutes 556:12; 556:13).

It appears to us, therefore, that P.I.P. benefits, even though not applicable on an extraterritorial basis as part of the compulsory insurance now required under Chapter 90 Section 34A, can be and have been given extraterritorial effect as a matter of contract be-

tween Liberty Mutual Insurance Company and David P. Crouch its assured.

Thus, while Chapter 670 does not specifically provide for extra-territorial application of P.I.P. benefits neither does it forbid such application. Where it states that P.I.P. benefits are granted "in lieu of damages otherwise recoverable in tort as a result of an accident occurring within the Commonwealth" the legislature appears to refer to the compulsory P.I.P. coverage required by statute. It seems to us that the insurer as a matter of contract with the insured, if it chooses to do so, can provide for extra-territorial application of P.I.P. as insurers have traditionally done in the matter of providing extra-territorial liability coverage for Massachusetts registrants for liability coverage other than the statutory coverage (Coverage A — Division 1 in the Massachusetts Standard Policy) that is required under Chapter 90 Section 34A and which by unequivocal terms has no extra-territorial application.

Our laws have long been that if there is any ambiguity in an insurance policy the same to be construed strictly against the insurer. *King v. Prudential Insurance Company of America,* 267 N.E.2d 643. *Lechmere Tire and Sales Company v. Jerald D. Burwick,* 277 N.E.2nd, Page 503.

However, there does not appear to be any ambiguity in the condition in the standard

Massachusetts Insurance Policy that pertains to extra-territorial coverage. Only under Coverage A — Division 1 "five and ten compulsory" is extra-territorial coverage precluded. All other coverages, under the policy Conditions, including Coverage A — Division 2, P.I.P. benefits, have extra-territorial effect.

While not compelled by Chapter 670 to give the P.I.P. coverage on an extra-territorial basis the carriers have chosen to furnish it to their policy holders as a matter of contract with their policy holders. See Volume 12 M.P.S. Automobile Law and Practice 1973 Pocket Part by Raymond J. Kenney, Jr. Section 1155.10. Therefore, in the instant case, we find that the defendant Travelers has a good defense under the exclusion provision of Coverage D of its policy in that the plaintiff could have proceeded to recover funeral expenses in an action of contract against Liberty Mutual under Coverage A — Division 2 (P.I.P. benefits) on the Crouch vehicle.

**Finding of the trial court is reversed and a finding is to be entered for the defendant.**

H. Burton Hampton,
   of Haverhill for the plaintiff

John Doherty,
   of Lynn for the defendant