PELAGIA BELBAS *vs.* NEW YORK LIFE INSURANCE COMPANY.

Suffolk.    October 7, 1937. — June 6, 1938.

Present: FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Insurance*, Proof of loss, Waiver by insurer. *Agency*, Scope of authority. *Waiver. Estoppel. Words,* "Due proof."

"Due proof" of total disability of an insured which would continue for life or had continued for not less than three consecutive months, necessary under the provisions of the policy to restore it after a default in payment of premium, was not shown by oral communications to certain employees of the insurer from a layman, not a member of the insured's household, that the insured had been operated on, was sick, at home, and unable to work or to pay the premium.

Conduct of a cashier of an insurance company and of a subordinate authorized to receive proofs of disability and in charge of disability claims, but without authority to adjust claims, although it lulled the insured into a false belief that an oral notice of disability given for him would be treated as "due proof" within the policy, could not properly have been found to bind the insurer as a waiver or an estoppel where the policy also provided that no agent, but only certain specified officers, had authority to make waivers.

CONTRACT. Writ in the Superior Court dated June 15, 1932.

Before *O'Connell,* J., a verdict was returned for the plaintiff in the sum of $6,245.20. The defendant alleged exceptions.

*F. H. Nash, (B. Aldrich & B. Potter* with him,) for the defendant.

*F. J. W. Ford,* for the plaintiff.

LUMMUS, J. This is an action of contract upon a policy for $5,000 upon the life of Peter Belbas. The plaintiff had a verdict, and the case is here on the defendant's exceptions. The insured died on February 26, 1932, and had been totally and permanently disabled from November 4, 1930. Premiums were due quarterly, and the last premium paid was that of August 20, 1930. The policy provided: "Upon receipt at the company's home office, before default in payment of premium, of due proof that the insured is totally disabled as above defined, and will be continuously so totally disabled for life, or if the proof submitted is not conclusive as to the permanency of such disability, but establishes that the insured is, and for a period of not less than three consecutive months immediately preceding receipt of proof has been, totally disabled as above defined, the following benefits will be granted: (a) Waiver of premium. — The company will waive the payment of any premium falling due during the period of continuous total disability . . . . In event of default in payment of premium after the insured has become totally disabled as above defined, the policy will be restored and the benefits shall be the same as if said default had not occurred, provided due proof that the insured is and has been continuously from date of default so totally disabled and that such disability will continue for

life or has continued for a period of not less than three consecutive months, is received by the company not later than six months after said default." Another provision of the policy was the following: "Grace. — If any premium is not paid on or before the day it falls due the policy-holder is in default; but a grace of one month (not less than thirty days) will be allowed for the payment of every premium after the first, during which time the insurance continues in force. . . . "

No written proof of total disability was ever received or made. The date of default in payment of premium was November 20, 1930, after the insured had become totally and permanently disabled. The right to have the policy restored under the provisions already quoted expired on May 20, 1931, unless by that time "due proof" of total disability had been furnished. In the absence of full payment of premiums, the substantive right of the insured and of the plaintiff to recover under the policy was dependent upon compliance with the requirement of "due proof." *Sherman* v. *Metropolitan Life Ins. Co.* 297 Mass. 330.

"Due proof" means evidence that is proper, suitable and sufficient in the opinion of the tribunal, not in that of the insurer. The respective functions of judge and jury do not concern us in this case. *Taylor* v. *Aetna Life Ins. Co.* 13 Gray, 434. *Jarvis* v. *Northwestern Mutual Relief Association*, 102 Wis. 546, 549. *Globe & Rutgers Ins. Co.* v. *Prairie Oil & Gas Co.* 248 Fed. 452, 455. *Traiser* v. *Commercial Travellers' Eastern Accident Association*, 202 Mass. 292, 294. *Security Bank of Richmond* v. *Equitable Life Assurance Society*, 112 Va. 462, Ann. Cas. 1913 B 836, and note. The policy in question does not require satisfactory proof, like that in *Traiser* v. *Commercial Travellers' Eastern Accident Association*, 202 Mass. 292, nor proof on blanks furnished by the insurer, like that in *Constantino* v. *Massachusetts Accident Co.* 221 Mass. 464, 467, 468.

Mere notice, intended or adapted to put the insurer itself on inquiry (*Rollins* v. *Boston Casualty Co.* 299 Mass. 42), does not amount to "due proof." *O'Reilly* v. *Guardian*

*Mutual Life Ins. Co.* 60 N. Y. 169. *Equitable Life Assurance Society* v. *Dorriety*, 229 Ala. 352. Compare *Fass* v. *Illinois Surety Co.* 177 App. Div. (N. Y.) 596. "Proof" means "evidence in some form, such form as is usual and customary in such cases, or as is recognized by law, and is calculated to convince or persuade the mind of the truth of the fact alleged." *Fitchburg Savings Bank* v. *Massachusetts Bonding & Ins. Co.* 274 Mass. 135, 152.

There was evidence tending to show the following facts with reference to "due proof," occurring from November 4, 1930, until after May 20, 1931, the date at which the rights of the insured ended unless preserved by due proof, waiver or estoppel. In December, 1930, an uncle of the insured talked with the insured about his inability to pay premiums and the danger of lapse of the policy. The insured asked the uncle "to take care of that for him and to notify the company because he was sick and operated on and couldn't work and he was unable to pay his premium," and to see if he could not get some money for disability benefits. The uncle telephoned to the agent of the defendant who wrote the policy, and told him that the insured was ill in the hospital, and unable to work or to pay premiums. The agent told the uncle "not to worry and he would take care of it." About March 1, 1931, the uncle went to the office of the defendant in Boston, called the Massachusetts Clearing House, and told one Colcord, the cashier who apparently was in charge of that office, that the insured was operated on at a hospital on November 4 and "he is sick, home and isn't able to work and can't pay his premium." The cashier took a note of his name and address and said "he would let him know and take care of him." Early in April the uncle went again to the office, saw the cashier, and told him that he had heard nothing about the case of the insured. The cashier referred the uncle to one Kelly, another employee of the defendant at that office. The uncle told Kelly substantially what he had told Colcord about March 1, 1931, and asked Kelly to send a physician to see the insured. Kelly said "he would look it up and let him know." Apparently

nothing was done by either Colcord or Kelly about the matter.  There was no evidence of any intentional waiver of due proof either before or after May 20, 1931.  The truth of the foregoing narration was denied by the defendant, but as the case comes up we must treat it as true.

In our opinion the evidence already recited shows only an oral notice to the defendant of some disability, and not "due proof" that the insured "is and has been continuously from date of default so totally disabled and that such disability will continue for life or has continued for a period of not less than three consecutive months."  The period of total disability was not stated with any clearness.  Moreover, the uncle was a layman, not a physician, was not a member of the same household as the insured, and is not shown to have had any special knowledge of the facts.  It would be unreasonable to expect the insurer to accept his informal statement as adequate evidence of the material facts bearing upon its liability, even if we assume, without deciding (see *Fitchburg Savings Bank* v. *Massachusetts Bonding & Ins. Co.* 274 Mass. 135, 151, 152; *Thompson* v. *United Casualty Co.* 296 Mass. 507; *Kustor* v. *Metropolitan Life Ins. Co.* 12 N. J. Misc. 565), that there may be oral "due proof." *Peters* v. *Mutual Life Ins. Co.* 17 Fed. Sup. 246. *Equitable Life Assurance Society* v. *Dorriety*, 229 Ala. 352.

The question remains, whether the plaintiff was entitled to go to the jury on the theory that the defendant had lost by waiver or estoppel the right to insist on "due proof." We assume without deciding that there was evidence of conduct of the cashier Colcord and his subordinate Kelly, at a time when the insured could have preserved his rights under the policy by furnishing due proof of his total disability, that tended to lull him into the false belief that no further action on his part was necessary. *Sheehan* v. *Commercial Travelers Mutual Accident Association*, 283 Mass. 543, 551–553, and cases cited. *Shapiro* v. *Security Ins. Co.* 256 Mass. 358. *Palumbo* v. *Metropolitan Life Ins. Co.* 293 Mass. 35, 37.

But we find no evidence that the conduct of Colcord or

Kelly was binding on the defendant. The policy required that due proof be received "at the company's home office," which was in New York. That fact differentiates the case from *Harnden* v. *Milwaukee Mechanics' Ins. Co.* 164 Mass. 382, 386. The defendant admitted, however, that proof received by the Massachusetts Clearing House would be equivalent to proof received at its home office. Kelly testified that he was authorized to receive proofs of disability for transmittal to the home office, and that he had "charge of the handling of the disability claims" in the office. But neither Colcord nor Kelly is shown to have had authority to adjust claims. *Walker* v. *Lancashire Ins. Co.* 188 Mass. 560. *Little* v. *Phoenix Ins. Co.* 123 Mass. 380, 388. *Zick* v. *Boston Casualty Co.* 282 Mass. 491, 495.

The application attached to the policy provided that "only the president, a vice-president, a second-vice-president, a secretary or the treasurer of the company can make, modify or discharge contracts, or waive any of the company's rights or requirements"; and the policy provided that "no agent is authorized to make or modify this contract, or to . . . waive any lapse or forfeiture or any of the company's rights or requirements." We think that no authority in Colcord or Kelly is shown, which would enable them by waiver or estoppel to dispense with the plain requirement of due proof. *Blair* v. *National Reserve Ins. Co.* 293 Mass. 86. *Thompson* v. *United Casualty Co.* 296 Mass. 507. *Zick* v. *Boston Casualty Co.* 282 Mass. 491.

The motion for a directed verdict for the defendant should have been granted. It is unnecessary to discuss other questions.

*Exceptions sustained.*
*Judgment for the defendant.*