CATHLEEN M. KING *vs.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Norfolk. January 6, 1971. — March 11, 1971.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Insurance*, Life insurance: waiver of premium, disability of insured; Construction of policy. *Words*, "Due proof."

Under a life insurance policy containing inherent ambiguities in its provisions for waiver of premiums during total disability of the insured, and leading an insured to believe that he must be totally disabled for at least six months before submitting proof thereof to the insurer and that his policy would continue in force during such period or until his death within the period notwithstanding the nonpayment of premiums then due, a belief supported by a provision that "If total disability commences during the grace period of a premium in default, . . . failure to have paid such premium will not of itself invalidate any claim arising from such disability," and in view of a clause of the waiver provision that a six month period of total disability would be "presumed to be permanent only for the purpose of determining the commencement of liability" thereunder, it was held that the commencement of a total disability itself, and not the time when proof thereof was submitted to the insurer, activated the waiver provision. [52]

In an action upon a life insurance policy interpreted as providing that the commencement of total disability of the insured activated a provision for waiver of premiums by the insurer, where it appeared that pain and headaches which afflicted the insured and caused him to stop working before a premium became due could reasonably be attributed to the advanced state of the disease causing his death about three months after he left work, carcinoma of the lung from which he had been suffering six months before his death and cerebral metastases from which he had been suffering three months before his death, conclusions were required that before the thirty-one days grace period for payment of the premium had expired the insured, as a result of the disease, was unable "to perform any work or engage in any business or occupation for remuneration or profit" within the definition of total disability in

the policy, and that the insurer was liable for the proceeds thereof to the beneficiary notwithstanding nonpayment of the premium and the absence of proof of total disability of the insured until after expiration of the grace period and his subsequent death. [53–54]

"Due proof" of total disability of the insured under a policy of life insurance and seasonable notice of his death were submitted to the insurer where it appeared in an action upon the policy by the beneficiary that about a month before the insured's death his physician informed the insurer that the insured had a "tumor on [the] top of [his] head," that the insurer learned of his death in eleven days, and that within a few months after his death the beneficiary submitted her claim and the relevant death certificate and her attorney wrote to the insurer in support of her claim. [54]

CONTRACT. Writ in the Superior Court dated May 9, 1967.

A motion for summary judgment was heard by *Roy*, J.

*Stephen J. Paris* for the plaintiff.

*Douglas G. Moxham* for the defendant.

SPIEGEL, J. In this action of contract the beneficiary of an insurance policy on the life of her father seeks to recover the proceeds of that policy in the amount of $17,610 with interest. The defendant filed a motion, accompanied by affidavits, for summary judgment under G. L. c. 231, § 59. The plaintiff filed counteraffidavits. The case is before us on the plaintiff's exception to the allowance of the defendant's motion.

We summarize pertinent facts stated in either the affidavits or the exhibits. These facts do not appear to be in dispute. On June 22, 1965, the defendant issued a decreasing term life insurance policy to Timothy A. King, a widower with five minor children. The insured paid all the premiums due on the policy except the one due on September 22, 1966. Prior to September, the health of the insured began to deteriorate. He complained of severe headaches, pain, and shortness of breath. The intensity of the pain and headaches was such that "he started to drink very heavily," and to use a pain killer in an attempt to obtain relief. He lost awareness of incoming bills, which he had scrupulously attended to prior to the onset of his illness. In late August or early September, he stopped working as a meatcutter.

About the same time, the insured consulted one Joseph Carella, M.D. On October 22, 1966, he complained of one of the worst headaches he had ever suffered, and on the twenty-third, he lost "feeling" in his left leg. On October 24 he entered the Quincy City Hospital, and on November 16 was transferred to the Lemuel Shattuck Hospital. On November 29 Dr. Carella informed the defendant, in the insured's application for reinstatement, that the insured had a "tumor on [the] top of [his] head." The insured died on December 25, 1966. The immediate cause of death was cerebral edema, due to cerebral metastases and carcinoma of the lung. The former condition existed for three months before the insured's death and the latter condition existed for six months preceding his death.

In March, 1967, the plaintiff submitted to the defendant a claim form together with her father's death certificate and the original policy. The certificate stated the immediate and the contributory causes of death and the duration of each condition from its onset to the date of his death. In a letter dated May 3, 1967, the plaintiff's attorney wrote to the defendant that the insured was totally disabled prior to and during the grace period, and therefore that the waiver of the premium provision became effective and relieved the insured of the obligation to pay premiums.

The "Waiver of Premium Benefit" (the Benefit) in the policy provides in pertinent part as follows: "Upon receipt at the Home Office of written notice and due proof that the Insured has become totally disabled . . . and has been continuously so disabled for at least 6 months during his or her lifetime (such total disability of such duration being presumed to be permanent only for the purpose of determining the commencement of liability under this Benefit), the Company will, subject to the provisions of this policy, waive the payment of each premium falling due during the uninterrupted continuance of such disability, but no premium falling due more than one year before receipt of such notice shall be waived unless it is shown that such notice was furnished as soon as was reasonably possible. . . . If total

disability commences during the grace period of a premium in default, . . . failure to have paid such premium will not of itself invalidate any claim arising from such disability . . . ." Subparagraph (d) of the Benefit provides in pertinent part that "[w]ritten notice and proof of claim must be furnished during the lifetime of the Insured and during the period of total disability. Failure to furnish such notice and proof will not of itself invalidate or diminish any claim under this Benefit if it is shown that notice and proof were furnished as soon as was reasonably possible." In addition, the policy provides that a "grace period of 31 days will be allowed for payment of a premium in default, during which period the policy will continue in force."

The defendant argues that it never became obligated to waive the premium due on September 22, 1966, because it was not furnished proof of the insured's alleged total disability arising or existing during the grace period, which expired on October 23, 1966. In its brief, the defendant admits that the policy does not require "total disability for six months before a premium can be waived to save a lapse," but only that written notice and proof of claim must be given during the life of the insured and during the period of total disability or as soon as reasonably possible. However, we note that there is no requirement in the policy that notice be given during the grace period or before default in payment of premiums. In fact, the policy provides that if total disability does commence during the grace period while a premium is in default, "failure to have paid such premium will not of itself invalidate any claim arising from such disability . . . ."

We are aware of the general rule, that if an insurance contract clearly and unequivocally so provides, the obligation of an insurance company to waive premiums arises only after the claimant submits to it proof of total disability. *Sherman* v. *Metropolitan Life Ins. Co.* 297 Mass. 330, 336. *Belbas* v. *New York Life Ins. Co.* 300 Mass. 471, 475–476. *Woodman* v. *John Hancock Mut. Life Ins. Co.* 300 Mass. 486, 487. *Hovhanesian* v. *New York Life Ins. Co.* 310 Mass. 626,

631. However, in construing the provisions of a policy, we favor that interpretation which "best effectuates the main manifested design of the parties." *Joseph E. Bennett Co. Inc.* v. *Fireman's Fund Ins. Co.* 344 Mass. 99, 103–104. "[N]arrow and unreasonable interpretations of clauses in an insurance policy are not favored. They are prepared by the insurer, and if, with equal reason, [are] open to two constructions, that most favorable to the insured will be adopted." *Stipcich* v. *Metropolitan Life Ins. Co.* 277 U. S. 311, 322. *MacArthur* v. *Massachusetts Hosp. Serv. Inc.* 343 Mass. 670, 672.

In the instant case, we are of opinion that the policy is inherently ambiguous and that the ambiguity must be resolved against the defendant, which prepared the policy. Therefore, the general rule requiring notice is inapplicable. The introductory paragraph of the Benefit states that before submitting proof of disability an insured be "continuously . . . disabled for at least 6 months during his or her lifetime." In its brief, the defendant relies on subparagraph (d) of the Benefit and asserts that proof of disability is required in all cases whether or not six months have elapsed. Although subparagraph (d) of the Benefit states that "[w]ritten notice and proof of claim must be furnished during the lifetime of the Insured and during the period of total disability," that provision appears inconsistent with the policy language previously recited. Indeed, this court stated in the case of *Hovhanesian* v. *New York Life Ins. Co.* 310 Mass. 626, 630, that submission of proof of disability "did not comply with the requirements of the policy" if it was submitted before the period stipulated in the policy has elapsed. Even if the two provisions of the policy could be somehow reconciled, they would be subject to two rational interpretations. In that instance, "If an insurer chooses to use language in a policy which permits two rational interpretations, we choose the one more favorable to the insured." *MacArthur* v. *Massachusetts Hosp. Serv. Inc.* 343 Mass. 670, 672, and cases cited therein.

Assuming that the insured did not have to be "con-

tinuously . . . disabled for at least 6 months during his or her lifetime," as the defendant admits, we think that a reasonable conclusion to be reached from a reading of the Benefit is that an insured would be led to believe that he must be disabled for at least six months and that his policy would, nevertheless, continue in force during the period of disability. In support of this conclusion we refer to the following language in the policy: "If total disability commences during the grace period of a premium in default, . . . failure to have paid such premium will not of itself invalidate any claim arising from such disability . . . ." The obvious purpose of a disability waiver provision is to waive payment of a premium which the insured and the insurance company contemplate the former will likely be unable to pay due to some disability. In view of the policy language previously quoted, we are of opinion that an insured would be justified in believing that his insurance continued during his disability or until his death, which might occur during the six month period.

We think that the inherent ambiguity in the policy relieved the insured from the obligation of giving notice before his death and that the Benefit became activated upon the commencement of the insured's disability. We need not depart from the general requirement enunciated in *Sherman* v. *Metropolitan Life Ins. Co.* 297 Mass. 330, that written notice and due proof must be submitted to the insurer if the policy clearly and unequivocally so provides. We are cognizant of certain language in the *Sherman* case with which we do not agree. Quoting from *Bergholm* v. *Peoria Life Ins. Co.* 284 U. S. 489, 491–492, the *Sherman* case said that the "obligation of the company does not rest upon the existence of the disability; but it is the receipt by the company of *proof* of the disability which is definitely made a condition precedent to an assumption by it of payment of the premiums *becoming due after the receipt of such proof.*" P. 335. In subsequent language the court in the *Sherman* case went further and said that "[t]he receipt of due proof of disability is not a mere condition, precedent or subsequent, of

recovery, but measures and bounds the insurer's obligation itself." P. 336.

The rule that proof of disability and not the existence of disability is the operative factor in determining an insurance company's obligation to waive premiums has undergone a considerable degree of erosion where the policy does not clearly condition waiver of premiums on proof of disability. Many jurisdictions have held that, unless by the unequivocal language of the policy notice and proof are made conditions precedent, it is the existence of the disability, and not proof thereof, which fixes the insurer's obligation in respect of waiver of premiums. *Minnesota Mut. Life Ins. Co.* v. *Marshall*, 29 F. 2d 977, 978 (8th Cir.), cert. den. 279 U. S. 851. *Love* v. *Northwestern Natl. Life Ins. Co.* 119 F. 2d 251, 252–253 (5th Cir.). *Home Life Ins. Co.* v. *Keys*, 187 Ark. 796, 799. *Mutual Life Ins. Co.* v. *Morris*, 191 Ark. 88, 94– 95. *Kingsford* v. *Business Men's Assur. Co.* 57 Idaho, 727, 734. *Lenkutis* v. *New York Life Ins. Co.* 374 Ill. 136, 145. *Murphy* v. *New York Life Ins. Co.* 219 Iowa, 609, 612– 613. *Commonwealth Life Ins. Co.* v. *Francis*, 278 Ky. 343. *Kampf* v. *Franklin Life Ins. Co.* 33 N. J. 36, 49. *American Natl. Ins. Co.* v. *Rardin*, 74 Okla. 146, 150. *National Standard Life Ins. Co.* v. *Smith*, 75 S. W. (2d) 1102, 1104 (Tex. Civ. App.). See the cases collected in *Sherman* v. *Metropolitan Life Ins. Co.* 297 Mass. 330, 335. See also Appleman, Insurance Law and Practice, § 8309, p. 113.

In the case at bar, we adopt the rule that the commencement of the disability itself, and not the time when the proof of that disability was submitted, operated to effectuate the waiver provision. We believe that our construction is justified by the following parenthetical clause in the Benefit, "such total disability of such duration being deemed to be permanent only for the purpose of determining the commencement of liability thereunder." Identical parenthetical phrases were involved in the cases of *Commonwealth Life Ins. Co.* v. *Francis*, 278 Ky. 343, 347, *Lenkutis* v. *New York Life Ins. Co.* 374 Ill. 136, 145, and *Kampf* v. *Franklin Life Ins. Co.* 33 N. J. 36. In *Minnesota Mut. Life Ins. Co.* v. *Marshall*,

29 F. 2d 977 (8th Cir.), cert. den. 279 U. S. 851, as in the instant case, the insured became totally disabled before his policy had lapsed, and he died shortly after the expiration of the grace period without having paid the premium. The insurance policy involved ·in the *Marshall* case was essentially similar to that before us. That case stated that the insured had paid, through his previous premiums, for the right to have his premiums discontinued during disability; that "[t]o make . . . [the] operation [of the policy] depend upon the time of proof of disability, and not upon the time of disability itself, which was the real thing that he was protecting himself against, renders the provision of the policy under construction inoperative and the right of no value." *Marshall* case, *supra,* at 978.

We think that the reasoning of the *Marshall* case and other cases cited above is persuasive. In Massachusetts, exclusions from coverage in an insurance policy are to be strictly construed (*Vappi & Co. Inc.* v. *Aetna Cas. & Sur. Co.* 348 Mass. 427; *Palmer* v. *Pawtucket Mut. Ins. Co.* 352 Mass. 304) and if the defendant wished to prohibit the waiver until after submission of due proof, it should have stated so explicitly. As we said in *MacArthur* v. *Massachusetts Hosp. Serv. Inc.* 343 Mass. 670, 672, "[w]e see no reason why an exclusionary clause should not be written free from any ambiguity and in such simple language so as to be readily understood by a person not versed in legal technicalities or nuances of phraseology."

We are of opinion that the defendant's obligation to waive the premiums commenced when the insured became totally disabled. There is ample evidence contained in the counteraffidavits, not contradicted by the defendant, that the insured was totally disabled within the terms of the policy. The policy defines total disability as "complete incapacity of the Insured, resulting from disease or bodily injury, to perform any work or engage in any business or occupation for remuneration or profit." The counteraffidavits disclose that the insured "stopped working" before his premium became due on September 22, 1966. The

pain and headaches which afflicted him and necessitated his cessation of employment can reasonably be attributed to the advanced state of disease which caused his death about three months after he left work. The death certificate specifies that the insured suffered from carcinoma of the lung six months before his death and cerebral metastases three months before his death. This evidence leads us to conclude that before the grace period expired on October 23, 1966, the insured already was in a condition of total disability resulting from disease, so that he was completely incapacitated "to perform any work or engage in any business or occupation for remuneration or profit," within the language of the policy. *Trucken* v. *Metropolitan Life Ins. Co.* 303 Mass. 501, 505.

We are also satisfied that in the circumstances of this case, the defendant was adequately apprised of the insured's disability and of his death. "Due proof" of disability "means evidence that is proper, suitable and sufficient in the opinion of the tribunal, not in that of the insurer." *Belbas* v. *New York Life Ins. Co.* 300 Mass. 471, 473. Here, the defendant knew that the insured had a "tumor on [the] top of [his] head" as disclosed by the reinstatement application dated November 29, 1966. The defendant learned of the insured's death on January 5, 1967. In March, 1967, the plaintiff submitted her claim and the death certificate. These documents together with the letter of the plaintiff's attorney on May 3, 1967, can properly be said "to enable the defendant 'to form an intelligent estimate as to whether the death came within the terms of the policy.'" *Krantz* v. *John Hancock Mut. Life Ins. Co.* 335 Mass. 703, 707, and cases cited.

*Exceptions sustained.*