**M.D. PHELPS and Irene K. Phelps, Plaintiffs, Appellees,**

v.

**FEDERAL EMERGENCY MANAGEMENT AGENCY, Defendant, Appellant.**

**No. 85–1591.**

United States Court of Appeals, First Circuit.

Heard Jan. 7, 1986.

Decided Feb. 28, 1986.

Evan Slavitt, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for defendant, appellant.

Robert Sweeney Troy, Buzzards Bay, Mass., for plaintiffs, appellees.

Before COFFIN, Circuit Judge, ALDRICH and ROSENN,* Senior Circuit Judges.

ROSENN, Circuit Judge.

This appeal raises the troublesome question whether a government insurance agency is barred from asserting as a defense the failure of its insured to file a written proof of loss when misrepresentations of the agency induced the failure. Our specific task is to determine whether, under the circumstances we have here, the insurer's status as a federally subsidized agency precludes the application of traditional estoppel against it.

Because many factors have made it uneconomical for the private insurance industry to make flood insurance available to those in need of such protection from flood disasters on reasonable terms and conditions, Congress established a National Flood Insurance Program (NFIP), 42 U.S.C. § 4001 *et seq* (1982). The Director of the Federal Emergency Management Agency (FEMA) is presently authorized to carry out the program,[1] 42 U.S.C. § 4011 (1982). The Secretary of the Treasury has been authorized to establish in the United States Treasury a National Flood Insurance Fund. 42 U.S.C. § 4017.

On February 11, 1974, the plaintiffs, M.D. and Irene Phelps, initially purchased a policy of insurance under the program against loss to their home in Wellfleet on the Massachusetts coast. On March 13, 1980, while the policy was in full force and effect, the plaintiffs sustained serious damage to their home as a result of a severe storm. FEMA denied coverage and plaintiffs sued in the United States District Court for the District of Massachusetts. FEMA contended that the loss was outside the scope of the policy and that the insured had failed to comply with the requirement that a claimant file a written proof of loss. Following a trial with an advisory jury, the court ruled in favor of the insured for the

---

* Of the Third Circuit, sitting by designation.

1. The administration of the program has undergone change.

From June 6, 1969 to December 31, 1977, the program was administered by the National Flood Insurers Association, an unincorporated association of insurance carriers under a contract with the Department of Housing and Urban Development (HUD). Effective January 1, 1978, HUD took over administration of the program. By executive order on April 1, 1979, FEMA assumed responsibility for administering the program.

*Meister Bros., Inc. v. Macy,* 674 F.2d 1174, 1175 n. 1 (7th Cir.1982).

full amount of the policy. FEMA appeals and we reverse.

## I.

The facts in this case are undisputed. On March 14 and 15, 1980, a fierce storm struck the Wellfleet coast. Winds reached 67 miles per hour and waves reached levels attained only twelve times in twelve years. Thirty-three feet of land immediately in front of the Phelps' home collapsed.

The Phelps inspected the loss about one week later and learned that because of the devastating damage to their home, the local building inspector had condemned it. M.D. Phelps telephoned Liberty Mutual, the agent listed on the flood insurance policy. He spoke to Paul Amoroso, a claims supervisor, who referred him to the NFIP offices in Maryland. Phelps called the NFIP offices and talked to Burke Gabriel, a claims supervisor who identified himself as the head of investigations for the NFIP. Gabriel was an employee of Electronic Data Services Federal Corp. (EDS), the "servicing agent" authorized by government regulations to "assist in issuing flood insurance policies under the Program in communities designated by the [Federal Insurance] Administrator [see 44 C.F.R. § 2.64], and to accept responsibility for delivery of policies and payments of claims for losses as prescribed by and at the discretion of the Administrator." 44 C.F.R. § 62.3(a) (1985). Phelps described the loss to Gabriel, who assured Phelps that the information he had furnished fully reported the loss, that the investigative process would begin immediately, and that Phelps need do nothing further. Phelps inquired about filing a written report but Gabriel told him it was unnecessary. Phelps testified that he called EDS several times, and each time they assured him that he had properly reported the loss and that the investigation process was underway.

FEMA instructed its agent, John McNamara of Crawford and Company, an insurance adjustment firm, to investigate the loss. Crawford inspected the property and noted that the house had been deemed "un-inhabitable" by the Wellfleet building inspector. On May 20, 1980, McNamara filed a "Preliminary Report of Inspection" that concluded: "We feel there is coverage."

On May 22, 1980, McNamara wrote to the insured to inform them that he had inspected the property and reported to NFIP. His letter consisted primarily of a check list of documents required for the investigation but the only item checked was an enclosed non-waiver agreement. He neither checked item 3 referring to a proof of loss, nor enclosed a form for proof of loss. The Phelps signed and returned the enclosed non-waiver agreement which stated that investigation of the claim did not cause waiver of any rights by either party. At no time during the process did anyone notify the insured to submit a proof of loss form. M.D. Phelps testified that he relied on assurances by FEMA's duly authorized representative that he need do nothing further to properly file his claim.

The investigation continued until January 1981 and at no time did FEMA or its agents suggest that they required a proof of loss or that one should be filed. On the contrary, FEMA's agents specifically assured the Phelps that they need do nothing further. FEMA never raised the issue of the absence of the proof of loss form during the claims period and they completed their investigation without it. FEMA eventually denied coverage of the loss because it concluded that the loss was not due to a "flood" and was therefore outside the scope of the policy's coverage. The Phelps brought suit to recover on their policy. The district court found that the damage was due to a "flood" within the meaning of the regulation, and that FEMA was estopped from raising as a defense the Phelps' failure to file a written proof of loss.

## II.

The Standard Flood Insurance Policy (SFIP) in effect at the time required the insured to submit a "proof of loss" to the insurer within 60 days of the alleged loss.

Within 60 days after the loss, unless such time is extended in writing by the Insurer, the Insured shall render to the Insurer, a proof of loss, signed and sworn to by the Insured ... as to the following: the time and origin of the loss, the interest of the Insured and all others in the property, actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposure of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts hereof were occupied at the time of the loss....

44 C.F.R. § 61, App. A(1), Dwelling Form ¶ N (1979) (current version at 44 C.F.R. § 61, A(1), General Conditions and Provisions, ¶ I.4 (1985)). Failure to comply with this requirement ordinarily barred recovery:

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all of the requirements of this policy have been complied with....

Dwelling Form, General Conditions and Provisions, ¶ S, 44 C.F.R. § 61, App. A(1) (1979) (current version at 44 C.F.R. § 61 App. A(1), General Conditions and Provisions, ¶ Q (1985)).

Thus, if FEMA can raise as a defense the Phelps' failure to comply with the written proof of loss requirement, it can bar recovery on the policy.[2] The threshold question presented is whether the principles of estoppel should apply to prevent FEMA from raising this defense. Our review of this question of law is plenary. *Molerio v. Federal Bureau of Investigation*, 749 F.2d 815, 820 (D.C.Cir.1984). In order to give the insured the benefit of any doubt, we assume, without deciding the question, that

the substantive claim of the insured under the policy is meritorious.

### A.

■ Equitable estoppel is a judicially-devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or a defense, regardless of its substantive validity. Courts invoke the doctrine when "one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it" acts to his or her detriment. Restatement (Second) of Torts § 894(1) (1977).

Thus, the party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse," and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading. *See Wilber National Bank v. United States*, 294 U.S. 120, 124–125, 55 S.Ct. 362, 364, 79 L.Ed. 798 (1935).

*Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984).

■ The elements of traditional estoppel are plainly present in this case. Had the Phelps purchased their flood insurance from a private carrier, there would be no doubt whatsoever that they could have invoked the doctrine. FEMA's agents represented to the insured that they need not file a written proof of loss, and that FEMA could conduct its investigation without it. The agents, whom the law required the insured to deal with, made the representations reasonably believing that the Phelps would rely on them. The Phelps reasonably relied on these assurances and as a result changed their legal position to their detriment. The Supreme Court, however,

---

**2.** Interpretation of these contract provisions is a matter of federal law. "This Court has consistently held that federal law governs questions involving the rights of the United States arising

under nationwide federal programs." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979).

from its early decision in *Lee v. Munroe & Thornton*, 11 U.S. (7 Cranch) 366, 3 L.Ed. 373 (1813), to its most recent decision in *Heckler v. Community Health Services of Crawford County, Inc., supra*, has consistently [3] refused to apply the equitable estoppel doctrine against the government, no matter how compelling the circumstances. Justification for this refusal rests primarily upon considerations of sovereign immunity and constitutional grounds—the potential for interference with the separation of governmental powers between the legislative and executive Thompson, Equitable Estoppel of the Government, 79 Colum.L.Rev. 551, 565 (1979). There is also a vital concern for public policy. *Heckler v. Community Health Services, supra*, 467 U.S. at 63, 104 S.Ct. at 2225. In a complex government with thousands of agencies and departments, and innumerable employees, there is a very real need to protect the Government against binding commitments by improper conduct of its agents, which might promote fraud or collusion. "Fear of uncontrollable liability and crippling losses to the public treasury have also played a role in sustaining the rule." Thompson, *supra* at 557.

The district court in the instant case, citing *Meister Bros., Inc. v. Macy*, 674 F.2d 1174 (7th Cir.1982), allowed estoppel against FEMA because the insured reasonably relied on the representations of government agents and because allowing recovery would further congressional intent that flood victims be protected by insurance. We respect the district court's rationale and the substantive basis for it but in light of the Supreme Court's pronouncements, we are compelled to reject the court's conclusion that estoppel against the Government is permissible in this case.

We do not think that *Meister Bros.* squares with repeated and emphatic Supreme Court pronouncements pertaining to estoppel against the Government. The Court has rejected the two principles that support the *Meister Bros.* decision. First, the *Meister Bros.* court emphasizes the need for the Government to treat citizens fairly. 674 F.2d at 1177. For pragmatic public policy reasons, however, the Supreme Court does not weigh equitable considerations in government estoppel cases or consider the reasonableness of reliance on the representations of a government agent. Moreover, reliance on an erroneous representation may not be reasonable because all citizens are expected to know the law, however arcane. *See Community Health Services*, 467 U.S. at 63–65, 104 S.Ct. at 2225–27. Second, *Meister Bros.* rests in part on the distinction between the Government acting in its sovereign capacity and government serving a proprietary or business function. 674 F.2d at 1177. Cf. *Community Health Services v. Califano*, 698 F.2d 615, 620–21, (3d Cir.1983) ("[W]ith the great expansion of governmental operations, [federal] courts [of appeal] have recently shown a greater willingness to apply estoppel against the government in specific circumstances."). The Supreme Court, however, found no merit in this distinction in *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), and recently reaffirmed the vitality of the case in *Community Health Services*, 467 U.S. at 60, n. 11, 104 S.Ct. at 2224, n. 11. The analogy and force of *Merrill* are inescapable here.

---

**3.** Critics of the Court's application of the doctrine charge that it has not always been consistent and point to the Court's decisions in *Moser v. United States*, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951), and *United States v. Pennsylvania Chemical Corp.*, 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1972). *See* 4 K. Davis, Administrative Law Treatise § 20:2 (1983). The Court, however, does not regard these cases as turning on equitable estoppel and distinguishes them in its recent decision in *Heckler v. Community Health Services of Crawford County Inc.* Also, in *Immigration and Naturalization Service v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973), the Court suggested in dictum that it would permit estoppel only where government agents engage in "affirmative misconduct."

In *Merrill,* the respondents (Merrill Bros.) purchased crop insurance from the Federal Crop Insurance Corp., a wholly government owned enterprise. Their policy covered 460 acres of spring wheat, of which 400 acres were to be reseeded winter wheat. The insurer's agent advised the insured that the entire crop was insurable and on the agent's recommendation the insurer accepted the application for insurance. Drought later destroyed the entire crop and Merrill Bros. learned to its dismay that valid regulations precluded crop insurance for reseeded wheat. Acknowledging that under the circumstances recovery could be had against a private insurance company, nonetheless, the Supreme Court refused to estop the Government from denying liability stating:

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

332 U.S. at 384, 68 S.Ct. at 3.

The salient facts in *Merrill,* with one exception, paralleled the facts in this case. Both involved insurance coverage obtained from a government agency. In each case, a government agent made erroneous representations to the insured. In both cases, the insured relied on those representations to the insured's detriment. The only distinction is that in *Merrill* the respondents were not entitled to coverage whereas the plaintiffs here were.

A comparatively recent case, *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1980), is also instructive because, like this case, it involved a procedural default improperly precipitated by a government agent. By per curiam opinion, it reversed a scholarly decision of the court of appeals challenging the principle that the Government cannot be estopped in circumstances of procedural default. The Court stressed " 'the duty of all courts to observe the conditions defined by Congress for charging the public treasury.' " *Id.* at 788, 101 S.Ct. at 1471 (quoting *Merrill,* 332 U.S. at 385, 68 S.Ct. at 3). It also held that the government agent's failure to comply with the Claims Manual by not recommending that the claimant file a written application, as required for "mother's insurance benefits" for which she was eligible under the Social Security Act, did not constitute affirmative misconduct. It rejected the court of appeals' distinction between the claimant's substantive eligibility and her mere failure to satisfy the procedural requirement as a justification for estopping the Government with the statement: "A court is no more authorized to overlook the valid regulation requiring that applications be in writing than it is to overlook any other requirement for the receipt of benefits." *Schweiker v. Hansen,* 450 U.S. at 790, 101 S.Ct. at 1472.

The *Merrill* Court found that the agent's failure to comply with the Government Claims Manual by not recommending to the claimant that she file a written application did not constitute affirmative misconduct. As it later did in *Heckler,* the Court left the door open to estoppel in certain circumstances. It concluded, however, that the agent's errors in the advice he gave the social security claimant fell far short of conduct which would raise a serious question of whether the Government is estopped from insisting upon compliance with a valid regulation.

We believe that the analyses in *Merrill* and *Hansen* apply with particular force to the facts of this case. In all three cases, there were erroneous misrepresentations to innocent persons. In each of the cases, the recipients of the erroneous information relied on it to their serious detriment. In *Hansen,* the claimant was eligible for benefits and would have been entitled to them had she filed a written application. In the

instant case, we have assumed arguendo that the insured would have been entitled to their insurance coverage had they filed a written proof of loss.

As far as we have been able to determine, the Supreme Court has never shown hospitality toward claims of estoppel against the Government. *See supra* note 3. It has explicitly or implicitly rejected each point relied on by the district court in the instant case for invoking estoppel against the Government. Regardless of the district court's belief that the insured reasonably relied on a positive misrepresentation by FEMA's agent, a belief to which we subscribe, we are compelled to hold that in these circumstances estoppel may not be applied against a government agency despite the hardship visited upon the insured. Whatever our inclinations may be, they must give way to the admonition that it is "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." The Phelps' failure to file a written proof of loss therefore bars their recovery on their policy unless, as they argue, FEMA waived this requirement.

### B.

■ The insured argue that FEMA's agents waived the proof of loss requirement through their oral assurances that the Phelps had done all that was necessary to collect on the insurance policy and that the submission of a proof of loss would be unnecessary. However, federal law and the terms of the Standard Flood Insurance Policy explicitly preclude oral waiver or waiver by conduct. 44 C.F.R. § 61.13(d) (1979) provided that:

The Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance Program, and no provision of the said documents shall be altered, varied, or waived other than through the issuance of appropriate amendatory endorsement, approved by the [Federal Insurance] Administrator as to form and substance for uniform use. *See* 44 C.F.R. § 61.13(d) (1985) (identical). The Standard Flood Insurance Policy, of which the insured had a copy, stated in pertinent part:

[N]o provision [of this policy] may be waived except such as by the terms of this policy is subject to change. No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of the Insurer relating to appraisal or to any examination provided for herein.

44 C.F.R. § 61, App. B, Dwelling Form ¶ D (1979) (current version at 44 C.F.R. § 61, App. A, Art. VIII ¶ D (1985)). Therefore, FEMA can waive the proof of loss requirement only by duly executing a written waiver, which it did not do. In fact, it requested that the insured execute, and they did, a "non-waiver agreement," the effect of which we do not reach. We hold that FEMA did not waive the proof of loss requirement.

### III.

Controlling and consistent Supreme Court precedent compels us to hold that the Phelps' failure to submit a written proof of loss, coupled with the absence of a waiver of this requirement by FEMA, constitutes a valid defense to recovery on the insurance policy.[4] Accordingly, the judgment of the district court is reversed with instructions to dismiss the complaint. Each side to bear its own costs.

ALDRICH, Senior Circuit Judge, concurring.

I concur fully in the court's opinion, with one exception. I am not so clear that the government's anti-estoppel rule is so out of line with the state cases as the opinion suggests. At least in Massachusetts, with-

4. In light of our disposition of this appeal, we do not reach the question whether the property

damage was due to a "flood" within the meaning of the SFIP.

out pursuing the matter in detail, a provision in the policy that only stated officers may waive the requirement for written proof of loss, may prevent "waiver or estoppel" by statements of other employees. *Belbas v. New York Life Ins. Co.*, 300 Mass. 471, 475, 15 N.E.2d 806 (1938). This is the whole purpose of the anti-waiver provision. I agree, however, that we have here a matter of federal law, and with the court's exposition and application.