<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-1038

             CITY OF HOPE NATIONAL MEDICAL CENTER,

                     Plaintiff, Appellant,

                               v.

                       HEALTHPLUS, INC.,

                      Defendant, Appellee.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Juan M. Perez-Gimenez, U.S. District Judge]

                             Before

           Selya, Boudin and Lipez, Circuit Judges.
                                
                                

    Gary L. Tysch on brief for appellant.
    Jorge E. Perez Diaz and Jos W. Vzquez Matos on brief for
appellee.

September 11, 1998

                               

                                
                                

    LIPEZ, Circuit Judge.  Plaintiff-appellant City of Hope
National Medical Center (City of Hope) filed an action asserting
that defendant-appellee Health Plus, Inc. (HPI) and others were
obligated to pay City of Hope for its treatment of Maria D. Diaz
for leukemia.  City of Hope appeals from the judgment entered in
the district court granting defendants' motions for a summary
judgment, primarily on the basis of the non-assignability of Diaz's
rights pursuant to two health insurance policies.  We affirm.
                              I.
    Maria D. Diaz was diagnosed with myeloid leukemia in 1992.  
After initial treatment in Puerto Rico, she experienced a period of
remission.  In late 1992, however, Diaz suffered a relapse of her
cancer that required additional treatment.  Diaz was referred by
her treating physicians to Memorial Sloane-Kettering Hospital in
New York City for consultation and further treatment.  In January
1993, Diaz was referred by doctors at Memorial Sloane-Kettering to
City of Hope in Duarte, California with a recommendation that Diaz
undergo high-dose chemotherapy with allogenic bone marrow
transplantation (HDCT/ABMT).  Diaz was admitted to City of Hope in
January 1993.  Diaz received extensive treatment for her leukemia
at City of Hope (including HDCT/ABMT), ultimately receiving
services costing in excess of $250,000.
    After Diaz's admission and the commencement of her treatment,
City of Hope sought coverage for Diaz's medical expenses from her
health insurers.  Diaz had two sources of health insurance: Segurio
de Servicio de Salud de Puerto Rico, Inc. (Triple-S) was her
primary insurance carrier (offered through her employer) and PCA
Health Plan of Puerto Rico (formerly HealthPlus, Inc. or "HPI") was
her secondary insurance carrier (offered through her husband's
employer).  Except under limited circumstances, only services
provided by physicians and hospitals that were part of the HMO
network were covered by Diaz's HPI policy; treatment outside the
network was only covered if it was (i) pre-approved by the HMO or
(ii) constituted emergency medical services.  City of Hope did not
have a contract with Diaz's HMO to provide medical services.
    Triple-S denied coverage for Diaz's treatment at City of Hope
because Diaz's policy did not cover HDCT/ABMT.  HPI refused
coverage because, inter alia, neither City of Hope nor Diaz had
complied with the pre-authorization procedures mandated by Diaz's
HMO policy.  
    In April 1993, Diaz signed a document that purported to assign
her rights under her health insurance policies to City of Hope
"[t]o the degree permitted under any insurance policy."  The HPI
health insurance policy at issue contained the following clause:
"[a]ll entitlements of a member to receive covered rights are
personal and may not be assigned."
    Alleging a breach of the health insurance plans, City of Hope
subsequently sued Triple-S, HPI, and American Airlines Employee
Benefit Plan (the administrator of her husband's employer's benefit
program) for benefits and attorney's fees pursuant to the Employee
Retirement Income Security Act (ERISA), 29 U.S.C.  1001 et seq.  
The three defendants filed answers and thereafter moved for a
summary judgment.  The district court granted summary judgment for
the defendants, finding, with regard to HPI, that (i) the non-
assignment clause was valid, and precluded City of Hope's claims,
(ii) the services rendered by City of Hope were not "emergency
medical services," and (iii) HPI was not equitably estopped from
denying coverage.
    City of Hope filed a timely notice of appeal.  We subsequently
dismissed this appeal with respect to Triple-S and American
Airlines Employee Benefit Plan because City of Hope failed to raise
any issue regarding the district court's grant of a summary
judgment for those appellees.  Thus, HPI is the sole remaining
appellee.   
                             II.
    In considering a motion for summary judgment, the court's
"role is to pierce the boilerplate of the pleadings and assay the
parties' proof in order to determine whether a trial is actually
required."  Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794
(1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993).  A motion for
summary judgment should be granted "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to judgment
as a matter of law."  Fed. R. Civ. P. 56(c).  Because the lower
court makes a judgment of law, our review of a summary judgment
ruling is de novo.  See IAM v. Winship Green Nursing Ctr., 103 F.3d
196, 199 (1st Cir. 1998).
    1.   The Rights of City of Hope Pursuant to Diaz's Assignment  
    City of Hope argues that it is a party to a valid assignment
from Diaz.  That contention requires us to address the following
issues: (i) whether ERISA permits the assignment of benefits under
ERISA-regulated health insurance plans; (ii) whether City of Hope
has standing under ERISA to assert its claim as assignee; (iii)
whether the non-assignment provision in Diaz's contract violates
public policy, and; (iv) whether the non-assignment provision bars
City of Hope's claim.  
         a. The Assignability of Health Care Benefits Under ERISA
    In Mackey v. Lanier Collection Agency & Services, Inc., 486
U.S. 825 (1988), the Supreme Court addressed whether ERISA allowed
or prohibited the garnishment of benefits under ERISA-regulated
welfare plans.  The Court noted that while Congress prohibited the
assignment or alienation of benefits under pension plans, 29 U.S.C.
1056(d)(1), Congress did not include such a ban on the assignment
of benefits under welfare plans, and reasoned that "Congress'
decision to remain silent concerning the attachment or garnishment
of ERISA welfare plan benefits 'acknowledged and accepted the
practice, rather than prohibiting it.'" Id. at 837-38 (quoting
Alessi v. Raybestos Manhattan, Inc., 451 U.S. 504, 516 (1981)).   
    Congress prohibited the assignment of pension benefits "[t]o
further ensure that the employee's accrued benefits are actually
available for retirement purposes."  H.R. Rep. No. 807, 93d Cong.,
2d Sess. 68 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4670,
4734.  By contrast, the assignability of welfare plan benefits may
further the goal of ERISA "to promote the interests of employees
and their beneficiaries in employee benefit plans."  Shaw v. Delta
Air Lines, 463 U.S. 85, 90 (1983).  For example, "assignment to a
health care provider facilitates rather than hampers the employee's
receipt of health benefits."  Hermann Hosp. v. MEBA Med. and
Benefits Plan, 845 F.2d 1286, 1289 (5th Cir. 1988).  Given these
considerations, we agree with other circuits that the logic of the
Supreme Court's decision in Mackey allowing the garnishment of
benefits under ERISA-regulated welfare plans allows the assignment
generally of welfare benefits under such plans.  See Davidowitz v.
Delta Dental Plan of California, 946 F.2d 1476, 1478 (9th Cir.
1991) (holding that "ERISA does not preclude welfare plan benefit
assignments" and citing Mackey); St. Francis Regional Med. Ctr. v.
Blue Cross and Blue Shield of Kansas, Inc., 49 F.3d 1460, 1464
(10th Cir. 1995) (citing Mackey for the proposition that "Congress
did not intend to enact a policy precluding [welfare plan benefits]
assignability").
         b. City of Hope's Standing to Sue Under ERISA
    Despite our conclusion that ERISA permits the assignment of
welfare plan benefits, we must address the basis for City of Hope's
standing to file its ERISA lawsuit pursuant to such an assignment.  
ERISA specifically enumerates the parties with standing to sue to
enforce ERISA's provisions: participants, beneficiaries,
fiduciaries and the Secretary of Labor. Under ERISA, a
"beneficiary" is defined as "a person designated by a participant
... who is or may become entitled to a benefit" under the plan.  29
U.S.C.  1002(8).  "Participant" is defined as "any employee or
former employee of an employer ... who is or may become eligible to
receive a benefit of any type from an employee benefit plan which
covers employees of such employer ... or whose beneficiaries may be
eligible to receive any such benefit."  29 U.S.C.  1002(7).  
Commenting on the exclusive nature of ERISA's list of parties with
standing, the Supreme Court has cautioned that "[t]he assumption of
inadvertent omission is rendered especially suspect upon close
consideration of ERISA's interlocking, interrelated, and
interdependent remedial scheme, which is in turn part of a
'comprehensive and reticulated statute.'"  Massachusetts Mut. Life
Ins. Co. v. Russell, 473 U.S. 134, 146 (1985) (quoting Nachman
Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361 (1980)).  
Thus, when we previously considered ERISA's standing provision, we
stated that "since Congress has carefully catalogued a selected
list of persons eligible to sue under ERISA, there is no plausible
rationale for us gratuitously to enlarge the roster."  Kwatcher v.
Massachusetts Serv. Employees Pension Fund, 879 F.2d 957, 965 (1st
Cir. 1989).
    In light of ERISA's comprehensiveness and the Supreme Court's
admonition to avoid expanding ERISA's class of plaintiffs, the
Third Circuit has refused to recognize assignee standing under
ERISA: "Congress simply made no provision in  1132(a)(1)(B) for
persons other than participants and beneficiaries to sue, including
persons purporting to sue on their behalf."  Northeast Dep't ILGWU
Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare
Fund, 764 F.2d 147, 154 n.6 (3d Cir. 1985) (emphasis added).   
Although set forth as dicta because the court went on to find that
the patient "did not, in fact, make an assignment of her claim,"
id., this language has led to the rejection of assignee standing
within district courts of that circuit.
    Other courts have not accorded significance to some
distinctions in  ERISA's definitions in concluding that a health
care provider-assignee has standing to sue pursuant to the express
terms of the statute.  In Kennedy v. Connecticut General Life
Insurance Co., 924 F.2d 698 (7th Cir. 1991), the plaintiff health
care provider, a chiropractor, sued the insurer for payment on the
basis of an assignment from the wife of an employee whose employer
had a group health policy with the insurer.  See id. at 699.  The
Kennedy court concluded that the health care provider had standing
as a beneficiary under ERISA, which defines beneficiary as "a
person designated by a participant ... who is or may become
entitled to a benefit" under the plan. 29 U.S.C.  1002(8).  This
conclusion reflects the premise that the spouse of an employee
covered by an ERISA-regulated welfare plan meets the definition of
a "participant."  In fact, as the statute makes clear,
"participant" is defined in ERISA only with reference to an
employee or a former employee.  See 29 U.S.C.  1002(7).  The wife
of an employee could not herself be a participant under her
husband's plan; she could only be a beneficiary.  The Kennedy court
did not acknowledge such a distinction, holding that the wife of
the employee was "unquestionably a participant as  1002(7) uses
that term ...."  Id. at 700.  
    The district court in this case also accepted the proposition
that the spouse of an employee meets the ERISA definition of a
participant: "Diaz was a participant in an employee welfare benefit
plan sponsored by  her husband's employer."  983 F. Supp. at 70.  
It offered the further observation that "by virtue of the
assignment, City of Hope could ostensibly become a beneficiary --
i.e. one designated by a participant to become entitled to a
benefit under the plan."  Id. at 73 n.7 (emphasis added).  In fact,
however, Diaz was neither an employee nor a former employee, and
hence she did not meet ERISA's clear definition of "participant."  
Therefore, Diaz could not confer beneficiary status on City of
Hope, given ERISA's definition of a beneficiary as "a person
designated by a participant ... who is or may become entitled to a
benefit" under the plan.  See 29 U.S.C.  1002(8).  
    The district court did not, however, base its decision on this
incorrect characterization of Diaz's status.  Instead, it focused
on Diaz's status as a beneficiary of her husband's health care plan
and concluded, in conformity with the approach of a number of
circuits, that a health care provider, as the assignee of a
beneficiary, "acquires derivative standing and is able to sue as a
'beneficiary' by standing in the shoes of his assignor."  983 F.
Supp. at 73 (citing Misic v. Building Serv. Employees Health and
Welfare Trust, 789 F.2d 1374, 1378 (9th Cir. 1986)).  We agree with
this approach, which is consistent with our position in Kwatcherthat there is no justification for expansion by the court of the
roster of persons eligible to sue under ERISA.  See Kwatcher, 879
F.2d at 965.
    The term derivative means "coming from another .... That which
has not its own origin in itself, but owes its existence to
something foregoing."  Black's Law Dictionary 443 (6th ed. 1990).  
It is generally understood that "the assignee acquires rights
similar to those of the assignor, and is put in the same position
with reference to those rights as that in which the assignor stood
at the time of assignment."  3 Samuel Williston & Walter H.E.
Jaeger, A Treatise on the Law of Contracts  404, at 5  (3d ed.
1960).  If an assignee seeking relief in court stands in the place
of an assignor, there has been a substitution rather than an
expansion of the parties.
    In United States v. Carter, 353 U.S. 210 (1957), the Supreme
Court recognized assignee standing under the Miller Act.  The
Miller Act protects contractors on federal construction projects
"in lieu of the protection they might receive under state
statutes."  Id. at 216.  Like ERISA, the Miller Act confines
standing to an enumerated class: persons who have "furnished labor
or material in the prosecution of the work provided for in such  
contract ... and who ha[ve] not been paid in full therefor[.]"  Id.at 215 (citing 40 U.S.C.  270b(a)).  The Supreme Court rejected
the argument that the assignees of persons who had "furnished labor
or material" lacked standing to sue:
    The surety also argues that the trustees are not entitled
    to recover the promised contributions under  2(a) of the
    Miller Act, since they are [not] persons who have
    furnished labor or material ... [A] denial of an
    assignee's right to sue on the bond might deprive those
    for whom the security was intended of a fair chance to
    realize upon their claims by assignment....

    The trustees stand in the shoes of the employees and are
    entitled to enforce their rights.   

Id.  at 218-20(emphasis added)(footnotes omitted).  In this ERISA
context as well, we conclude that Congress did not intend to
disturb the common law principles of assignment.  See Pilot Life
Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987) (discussing Congress'
"expectations that a federal common law of rights and obligations
under ERISA-regulated plans would develop"); see also 3 Samuel
Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts
446A, at 328 (3d ed. 1960) (explaining that "the assignee has,
and has had for more than a century, a legal right ... enforceable
in courts of law") (citing Welch v. Mandeville (US) 1 Wheat 233, 4
L. ed. 79 (1816)).
    Although the district court recognized the validity of
derivative standing under ERISA, it denied City of Hope standing to
sue because it found the assignment from Diaz invalid.  This
conclusion wrongly conflates two distinct inquiries.  The standing
inquiry does not focus on the merits of the dispute.  It focuses
only on "whether the litigant is entitled to have the court decide
the merits of the dispute."  Warth v. Seldin, 422 U.S. 490, 498
(1975).  Consequently, City of Hope's standing depends on a
"colorable claim" that it is an assignee of a beneficiary.  SeeFirestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989)
(refining ERISA's definition of "participant" to include former
employees "who have a 'colorable claim' to vested benefits"); see
also Kennedy, 924 F.2d at 700 (applying the "colorable claim"
standard in the standing context and citing Firestone).  As the
assignee of an ERISA beneficiary, City of Hope satisfies the
standing requirements of section 1132 and has a right to have the
court decide the merits of its claim against HPI.         
         c. The Non-Assignment Clause and Public Policy
    City of Hope argues that the district court erred in giving
effect to the non-assignment clause in Diaz's HMO policy because
such a clause is contrary to the public policy advanced by ERISA.  
In effect, City of Hope asks us to read into ERISA's allowance for
the assignability of ERISA-regulated welfare plan benefits a bar to
the contractual non-assignability of such benefits.  Once again,
the Supreme Court's reasoning in Mackey is persuasive: "[Congress]
had before it a provision to bar the alienation or garnishment of
ERISA plan benefits, and chose to impose that limitation only with
respect to ERISA pension benefit plans, and not ERISA welfare
benefit plans.  In a comprehensive regulatory scheme like ERISA,
such omissions are significant ones."  Mackey, 486 U.S. at 837.  By
its silence on the assignability of ERISA-regulated welfare plan
benefits, "Congress intended not to mandate assignability, but
intended instead to allow the free marketplace to work out such
competitive, cost effective, medical expense reducing structures as
might evolve."  Davidowitz, 946 F.2d at 1481.   
    Consistent with the other circuits which have addressed this
issue, we hold that ERISA leaves the assignability or non-
assignability of health care benefits under ERISA-regulated welfare
plans to the negotiations of the contracting parties.   See St.
Francis Reg'l Med. Ctr., 49 F.3d at 1464 (enforcing a non-
assignment clause in an ERISA-regulated health insurance welfare
benefit plan against a health care provider); Arkansas Blue Cross
and Blue Shield v. St. Mary's Hosp., 947 F.2d 1341 (8th Cir. 1991),
cert. denied, 504 U.S. 957 (1992) (same).  Therefore, we conclude
that the non-assignment provision in Diaz's HMO policy is not
contrary to public policy.  
         d. The Scope of the Non-Assignment Clause
    In the alternative, City of Hope argues that even if non-
assignment clauses in ERISA-regulated plans are generally
enforceable, the district court erred in applying this non-
assignment clause to its claim as a health care provider.  Instead,
City of Hope argues that the non-assignment clause in Diaz's
contract was intended only to preclude her ability to transfer
rights to actual medical services to another individual, or to
preclude the diversion of benefit funds to an unrelated debt.
    One court of appeals has adopted this distinction, finding
that a non-assignment clause which read that "[n]o employee shall
at any time ... have any right to assign his rights or benefits"
did not prohibit the assignment of "causes of action arising after
the denial of benefits" as distinguished from "rights or benefits."  
See Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters, and
Engineers Health and Welfare Plan, 25 F.3d 616, 619 (8th Cir.
1994).  We think this approach would strain the plain meaning of
the contract language at issue in this case that "[a]ll
entitlements of a member to receive covered rights are personal and
may not be assigned."  As we have previously stated,
"straightforward language in an ERISA-regulated insurance policy
should be given its natural meaning."  Hughes v. Boston Mut. Life
Ins. Co., 26 F.3d 264, 268 (1st Cir. 1994) (quoting Burnham v.Guardian Life Ins. Co., 873 F.2d 486, 489 (1st Cir. 1989)).  We
agree with the district court that under the clear terms of the
contract, Diaz could not assign her rights to City of Hope.
    2. Equitable Estoppel
    Finally, City of Hope claims that HPI is equitably estopped
from denying coverage.  In Law v. Ernst & Young, we explained that
"the party to be charged [with an estoppel] must 'make [] a
definite misrepresentation of fact to another person.'"  Law v.
Ernst & Young, 956 F.2d 364, 368 (1st Cir. 1992) (quoting Phelps v.
FEMA, 785 F.2d 13 (1st Cir. 1986) and Restatement (Second) of Torts
894(1) (1977)).  In support of its estoppel claim, City of Hope
points to a March 23, 1993 fax from an HPI employee to City of Hope
that reads: "It is important to remember as I spoke to you a month
ago, that (Diaz) has some responsibilities to follow so she can
have services coverage."  The fax then made reference to Section VI
of Diaz's HMO policy, which included the terms under which health
services would be covered.  Given the fact that Diaz's treatment
had begun in January 1993, City of Hope argues that this reference
in March 1993 to the procedural requirements of the health
insurance policy held out the promise of recovery if there was
compliance with the procedures.  We agree with the district court
that a statement emphasizing the procedural requirements of a
health insurance plan is far from the "definite misrepresentation
of fact" about a willingness to pay for medical services necessary
to establish an estoppel claim.  There is no evidence in the record
that HPI ever represented that it would cover City of Hope's costs
for Diaz's treatment.
    For the foregoing reasons, HPI was entitled to judgment as a
matter of law.  The judgment of the district court is AFFIRMED.

</body>

</html>