# United States Court of Appeals
## For the First Circuit

No. 02-1952

MIMIYA HOSPITAL, INC. SNF,

Petitioner,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.

PETITION FOR REVIEW OF FINAL DECISION OF

THE DEPARTMENTAL APPEALS BOARD OF THE UNITED STATES

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Blas R. Ferraiuoli Martinez, with whom Carmen Eva Garcia-Cardenas was on brief, for Petitioner.
David A. Rawson, Assistant Regional Counsel, U.S. Department of Health and Human Services, with whom Alex M. Azar II, General Counsel, and Annette H. Blum, Chief Counsel, Region II, were on brief, for Respondent.

June 9, 2003

**LIPEZ**, **Circuit Judge**.  Petitioner Mimiya Hospital, Inc. SNF (Mimiya), a skilled nursing facility, seeks review of a final decision of the Departmental Appeals Board (DAB) of the Department of Health and Human Services.  The case concerns Mimiya's request for a hearing before an administrative law judge (ALJ) on the imposition of a Civil Monetary Penalty (CMP) by the Centers for Medicare and Medicaid Services (CMS) as a sanction for Mimiya's noncompliance with federal Medicare participation requirements. See 42 U.S.C. § 1395i-3(h)(2)(B)(ii).  The ALJ dismissed Mimiya's request on the ground that it was untimely, and the DAB, in pertinent part, affirmed the dismissal.  We, in turn, affirm the decision of the DAB.

## I.

To participate in Medicare, a skilled nursing facility must comply with federal Medicare requirements set forth at 42 U.S.C. § 1395i-3 and at 42 C.F.R. Part 483.  Generally, the Department of Health and Human Services enters into agreements with state agencies to conduct surveys of facilities on behalf of CMS-- the agency within the Department of Health and Human Services responsible for administering Medicare--to determine whether the facilities are in substantial compliance with the Medicare participation requirements.  42 U.S.C. §  1395aa; 42 C.F.R. §§ 488.10(a)(1), 488.26(c)(1).  Facilities found not to be in substantial compliance with participation requirements are subject

-2-

to enforcement remedies by CMS. <u>See</u> 42 U.S.C. § 1395i-3(h)(2)(B)(ii). If, after reviewing the survey results, CMS decides to take enforcement action against a facility, it issues a notice of initial determination which entitles the facility to a hearing, provided that a request is filed within sixty days from receipt of the notice of initial determination. 42 U.S.C. § 405(b); 42 C.F.R. §§ 498.3(b)(12), 498.5(b), 498.20(a), 498.40. Regulations governing CMS's notice of initial determination state that the notice must contain instructions for responding to the notice, including a statement of the facility's right to a hearing and the implications of waiving that right. 42 C.F.R. § 488.434(a)(2)(viii). Specifically, 42 C.F.R. § 488.436(b)(1) provides that if a facility waives the right to a hearing within sixty days from the receipt of notice of the initial determination, CMS will automatically reduce the CMP by thirty-five percent.

In this case, the Puerto Rico Department of Health (PRDH) conducted a survey of Mimiya from April 4 to April 6, 2000. The survey found thirty-five separate deficiencies, one of which posed immediate jeopardy to patient health or safety. On April 26, 2000, the PRDH conducted a revisit survey to determine whether Mimiya had made the required corrections to the immediate jeopardy deficiency and found that the corrections had been made, although other non-immediate jeopardy deficiencies persisted.

-3-

By letter dated May 26, 2000, CMS notified Mimiya of its determination, based on the PRDH surveys, that Mimiya was not in substantial compliance with the requirements for Medicare participation. CMS further notified Mimiya of its decision to impose the remedies of denial of payment for new admissions effective May 28, 2000, denial of nurse aide training for two years, and imposition of a CMP. The CMP consisted of $3,050 per day for the twenty-two-day period of April 4, 2000 through April 25, 2000 during which Mimiya's noncompliance constituted immediate jeopardy to resident health or safety, and $100 per day thereafter until such time as Mimiya achieved substantial compliance or CMS terminated the provider agreement. The May 26 letter further stated, pursuant to 42 C.F.R. § 498.40, that Mimiya had sixty days from receipt of the letter to request a hearing before an ALJ to challenge CMS's determination. The letter did not inform Mimiya of its option under 42 C.F.R. § 488.436 to waive the hearing in return for a thirty-five percent reduction in the amount of the CMP. Mimiya did not file a request for a hearing within the sixty-day period.

By letter dated August 30, 2000, CMS notified Mimiya that it had achieved substantial compliance as of June 22, 2000, and that the $100 per day portion of the CMP would be imposed for the period from April 26, 2000 through June 22, 2000 (a sum of $5,800). Added to the $67,100 CMP imposed for noncompliance constituting

immediate jeopardy, this brought the total CMP to $72,900.  The August 30 letter notified Mimiya of its right to request a hearing within sixty days and included language, omitted in the May 26 letter, informing Mimiya that if it waived its right to a hearing, the amount of the CMP would be reduced by thirty-five percent in accordance with 42 C.F.R. § 488.436.

On October 22, 2000--149 days after CMS notified Mimiya of its initial determination of noncompliance, and fifty-three days after CMS notified Mimiya of its achievement of substantial compliance--Mimiya requested a hearing before an ALJ to contest the determination of noncompliance.  On November 7, 2001, the ALJ ruled that Mimiya's request was untimely and dismissed the request. Mimiya appealed the dismissal to the DAB.

On June 5, 2002, the DAB issued a decision affirming the ALJ's finding that the May 26, 2000 letter fully apprised Mimiya of CMS's determination of noncompliance and the imposition of penalties, and hence that Mimiya's October 22, 2000 request for a hearing to contest the determination of noncompliance and imposition of penalties was untimely.  The DAB acknowledged that the May 26 notice was defective in that it failed to inform Mimiya of the option of a thirty-five percent reduction in exchange for waiving the hearing, but found that this defect was easily cured by awarding Mimiya a thirty-five percent reduction of the CMP imposed for the immediate jeopardy deficiency.   However, the DAB found

-5-

that Mimiya was not notified of the substantial compliance determination until August 30, 2000. The date of substantial compliance is relevant to both the $100 per day portion of the CMP and the penalty denying payment for new admissions until Mimiya achieved substantial compliance. Because Mimiya was not notified of the determination of the date of substantial compliance until the August 30 letter, Mimiya's request for a hearing on this issue was within the sixty-day period, and the DAB accordingly remanded the case to the ALJ to allow Mimiya to challenge the compliance determination date.

Although Mimiya appealed the DAB's decision denying the hearing, the DAB's remand to the ALJ to allow Mimiya to challenge the compliance determination raised an issue about the finality of the DAB's decision. However, on March 24, 2003, subsequent to oral argument, the parties notified us that they had responded to our finality concerns by reaching a settlement agreement on the issues remanded to the ALJ. Thus, the only issue outstanding in this case is the DAB's denial of Mimiya's request for a hearing on CMS's determination of noncompliance with federal Medicare participation requirements.

## II.

Mimiya contends that the notice provided by the May 26, 2000 letter was invalid for the purpose of triggering the sixty-day period for requesting a hearing, and that valid notice was not

-6-

provided until the August 30, 2000 letter. Thus, Mimiya reasons that its request for a hearing on the determination of noncompliance and imposition of penalties, filed within sixty days of the August 30 letter, was timely. Mimiya offers two arguments in support of this contention: (1) the failure of the May 26 letter to inform Mimiya of the option of a thirty-five percent reduction in the CMP in exchange for a waiver of hearing rights violated Mimiya's due process rights and rendered the notice invalid; (2) CMS is estopped from arguing that Mimiya's request for a hearing on the determination of noncompliance and imposition of penalties is untimely.

### A. Due Process

The deprivation of a constitutionally protected interest in life, liberty, or property is a threshold requirement for a successful procedural due process claim. Aponte v. Calderon, 284 F.3d 184, 191 (1st Cir. 2002). It is, frankly, difficult to understand the nature of the property interest that underlies Mimiya's claim. Mimiya attempts to articulate that interest as follows: "Medicare, through the creation of the above cited rules for notification of penalties, endowed [Mimiya] with a proprietary interest in being fully appraised [stet] of all its options when facing an imposed CMP." This description seems to equate a property interest with Mimiya's right to be advised of a thirty-

-7-

five percent reduction in the CMP if it waived its right to a hearing. This equation is erroneous.

It is well established that "individuals whose property interests are at stake are entitled to notice and an opportunity to be heard." Dusenbery v. United States, 534 U.S. 161, 167 (2002). In this case, the property interest at stake (and the issue for which Mimiya requests the hearing) is the CMP that Mimiya must pay as a penalty for noncompliance with Medicare regulations. CMS provided Mimiya with notice of the grounds for the noncompliance determination, the penalties imposed for noncompliance, and the opportunity to contest at a hearing the noncompliance determination and the penalties. Although Mimiya did not exercise its right to request a hearing, CMS complied with the requirements of due process by giving Mimiya notice of the deficiencies and the amount of the penalty, and an opportunity to be heard.

The deficiency in the May 26 notice provided by CMS did not implicate the notice and opportunity to be heard requirements of due process. Instead, that notice only failed to inform Mimiya of the regulatory option of receiving a thirty-five percent reduction in the CMP if it waived its opportunity to be heard. This failure did not affect Mimiya's choice to forgo the hearing: Mimiya was advised of its right to a hearing, and decided to give up that right without knowledge of the financial benefit of doing so. Because Mimiya so decided, the regulations governing the

-8-

administration of federal Medicare requirements arguably entitled Mimiya to the thirty-five percent reduction in the CMP. Mimiya cannot use its ignorance of the thirty-five percent reduction as a basis for requesting a hearing when that ignorance had no effect on its decision to forgo a hearing.

Recognizing Mimiya's equitable claim to the financial benefit provided by the regulations, the DAB awarded Mimiya the thirty-five percent reduction in its decision on Mimiya's appeal, thereby curing any harm from the deficiency in the May 26 notice. As the DAB aptly observed:

> Mimiya offered nothing to show how the failure to receive the option to settle the CMP for sixty-five percent would impact its due process rights; indeed, by failing to request a hearing based on the May 26 notice, it was defaulting for the full imposed penalty amount. If Mimiya did not seek a hearing for the full proposed penalty amount, then informing Mimiya of its option to waive its right to a hearing in exchange for a thirty-five percent penalty reduction would, if anything, make Mimiya even less likely to seek a hearing.

In fact, in its brief, Mimiya confirms that "[i]f CMS had met its procedural obligations and notified Mimiya of all its rightful options, [Mimiya] would have chosen the thirty-five percent reduction at the time of the May 26, 2000 notification." Therefore, the DAB's decision to award Mimiya the thirty-five percent reduction on appeal cured any deficiency in the May 26 notice.

**B. Estoppel**

Mimiya argues that CMS should be estopped from arguing that its request for a hearing was untimely because CMS's failure to notify Mimiya of the waiver option amounted to a misrepresentation on which Mimiya relied to its detriment. In Heckler v. Community Health Servs., 467 U.S. 51 (1984), the Supreme Court explained that a party seeking to assert estoppel must demonstrate that (1) the party to be estopped made a "definite misrepresentation of fact to another person having reason to believe that the other [would] rely upon it"; (2) the party seeking estoppel relied on the misrepresentations to its detriment; and (3) the "reliance [was] reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." Id. at 59; see also Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 63 (1st Cir. 1998); Clauson v. Smith, 823 F.2d 660, 661-62 (1st Cir. 1987).

We bypass the issue of whether CMS's omission of the waiver option in the May 26 letter was a misrepresentation (without suggesting that it was), and conclude that Mimiya's argument must fail because Mimiya cannot show detrimental reliance. In order to assert estoppel, a party must show that it "relied on its adversary's conduct in such a manner as to change [its] position for the worse." Heckler, 467 U.S. at 59 (internal quotation marks omitted). Given the choice between paying the full amount and

requesting a hearing, Mimiya in effect chose to pay the full amount. Notice of the option of receiving a thirty-five percent reduction for waiving its right to a hearing would not have altered that choice, as Mimiya itself has conceded. See supra. Because the DAB awarded Mimiya the thirty-five percent reduction, Mimiya did not suffer any harm as a result of the omission. Therefore, Mimiya has not demonstrated the detrimental reliance required by estoppel.[1]

### III.

For the foregoing reasons, the final decision of the Departmental Appeals Board of the Department of Health and Human Services is **affirmed**.

---

[1] Assuming the availability of estoppel against the government, we note that the burden for asserting such a claim is greater than that for asserting estoppel against a private citizen. Dantran, Inc. v. United States Dept. of Labor, 171 F.3d 58, 66 (1st Cir. 1999) ("If estoppel against the government possesses any viability . . . the phenomenon occurs only in the most extreme circumstances.") But "however heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present." Heckler, 467 U.S. at 61. Because Mimiya fails to make that demonstration, we need not discuss the precise parameters of an estoppel claim against the government.