# United States Court of Appeals

## For the First Circuit

No. 08-2374

KATHLEEN NAGLE,

Plaintiff, Appellant,

v.

ACTON-BOXBOROUGH REGIONAL SCHOOL DISTRICT,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. William G. Young, U.S. District Judge]

Before
Boudin, Hansen,[*] and Lipez,
Circuit Judges.

Jason R. Powalisz with whom Mark A. Hickernell, Alan J. McDonald and McDonald, Lamond & Canzoneri were on brief for appellant.
Deidre Brennan Regan with whom Deborah I. Ecker and Brody, Hardoon, Perkins & Kesten were on brief for appellee.

July 30, 2009

[*]Of the Eighth Circuit, sitting by designation.

**BOUDIN**, <u>Circuit Judge</u>. This case presents the question whether equitable estoppel may be applied against a government employer based upon the employer's oral assurances to the employee of coverage under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 <u>et seq</u>. (2006). The employer denies both the alleged assurances and the claim that the employee was terminated for taking leave; but because the employee's case was dismissed on summary judgment, the denials are of no consequence and we assume <u>arguendo</u> the latter's version of events. <u>Ruiz-Rosa</u> v. <u>Rullan</u>, 485 F.3d 150, 155 (1st Cir. 2007).

At the time of the events, Kathleen Nagle had been working since the year 2000 as a part time employee in the position of school monitor for the Acton-Boxborough Regional School District in Massachusetts. On January 12, 2004, Nagle requested leave under the FMLA in order to tend to her ailing husband. The FMLA entitles eligible employees to take twelve weeks of unpaid leave during any twelve-month period to care for a family member who is seriously ill. <u>See</u> <u>Engelhardt</u> v. <u>S.P. Richards Co., Inc.</u>, 472 F.3d 1, 3 (1st Cir. 2006).

To be eligible for FMLA leave, an employee must have worked at least 1,250 hours in the 12-month period before taking leave. 29 U.S.C. § 2611(2). Nagle was not eligible; in the 12 months prior to her request, she had worked only 554 hours. However, she asserts that George Frost, the district's deputy

-2-

superintendent, told her that she could take FMLA leave. Frost says he told Nagle she was <u>not</u> eligible but could take non-FMLA leave with continued health insurance, but, on the motion for summary judgment against her, her version governs. Nagle took leave until April 2004, writing Frost in March to thank him for allowing her to take FMLA leave; it appears no answer was ever made to the letter.

In February 2005, Nagle took several days off to care for her husband and she says that the principal's assistant at her school suggested to Nagle that she take family medical leave. Nagle requested FMLA leave in a letter dated February 18, 2005, but does not claim to have received a reply, and then took off eight weeks of leave. In March 2005, Nagle says she thanked Frost for granting her FMLA leave and that he never explained that she was not entitled to FMLA leave. Frost disputes this as well; again, Nagle's account must be assumed.

Once Nagle returned to work in April 2005, she says she met again with Frost who told her that additional FMLA leave was available if necessary, and after her husband reentered the hospital, she again in early May 2005 took what she believed to be FMLA leave. Nagle's husband died at the beginning of June. She says that she was told not to worry about rushing to return and that Frost told her that she had "nothing to worry about." No

writing from Frost confirms these assurances, but we assume that they occurred.

The school year ended in June 2005. On July 12, 2005, Nagle's employment with the school district was terminated. Nagle concluded that this was because she had taken leave and in August 2007, Nagle filed suit against the school district for violating the FMLA. 29 U.S.C. § 2615(a)(1). The school district countered that Nagle was not eligible for FMLA leave and that her job ended because the district had completed construction work on a new building and no longer needed monitors in the parking lots.

In due course, the school district moved for summary judgment on the ground that Nagle was not eligible for FMLA leave and as a result had no claim. She responded that the school district was estopped from relying on her lack of eligibility because of Frost's alleged assurances and that it had taken her leave into account in terminating her position. After further briefing the district court refused to apply estoppel against the school district and granted summary judgment in its favor.

Nagle now appeals, and the central issue--whether equitable estoppel is available in the present circumstances--presents a legal issue reviewed de novo. Southex Exhibitions, Inc. v. Rhode Island Builders Ass'n, Inc., 279 F.3d 94, 104 (1st Cir. 2002). In urging estoppel, Nagel relies principally on federal precedent and neither side argues that state law should apply.

Because this position is plausible and uncontested and because it might not matter anyway, we accept the premise without endorsing it.  Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 n.4 (2d Cir. 1998).[1]

Where an employee properly takes FMLA leave, the employee cannot be discharged for exercising a right provided by the statute, but can still be discharged for independent reasons. Kohls v. Beverly Enters. Wis., Inc., 259 F.3d 799, 804-05 (7th Cir. 2001).  The governing regulations provide that an employer "cannot use the taking of FMLA leave as a negative factor in [an] employment action[]."  29 C.F.R. § 825.220(a)(1), (c) (2005).  On this appeal, we assume arguendo that Nagle's taking of leave did play some role in her termination.

Nagle does not claim that she was in fact eligible for FMLA leave, but she argues that the school district is estopped from denying coverage.  The contours of equitable estoppel doctrine, where directed against a private party, are conventional. The doctrine seeks to prevent injustice when an individual detrimentally and predictably relies on the misrepresentation of

---

[1]The claim is made under a federal statute and could be affected by federal regulations, so federal estoppel law could well govern in the interests of uniform application.  Further, Massachusetts precedent, like federal precedent, is at best hesitant in applying estoppel against governmental units.  See, e.g., Morton St. LLC v. Sheriff of Suffolk County, 903 N.E.2d 194, 199-200 (Mass. 2009); Holahan v. City of Medford, 474 N.E.2d 1117, 1119-20 (Mass. 1985); Phipps Prods. Corp. v. Mass. Bay Transp. Auth., 443 N.E.2d 115, 118-19 (Mass. 1982).

another.  Mimiya Hospital, Inc. SNF v. U.S. Department of Health & Human Services sums up the doctrine thusly:

> [A] party seeking to assert estoppel must demonstrate that (1) the party to be estopped made a "definite misrepresentation of fact to another person having reason to believe that the other [would] rely upon it"; (2) the party seeking estoppel relied on the misrepresentations to its detriment; and (3) the "reliance [was] reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading."

331 F.3d 178, 182 (1st Cir. 2003) (alterations in original) (citation omitted).

If the school district were a private employer, Nagle would be entitled to a trial as to whether Frost did misrepresent matters, as to her reliance and on the reasonableness of any such reliance--the last being a "mixed" question that is at bottom normative but is regularly given to a jury where the matter is reasonably debatable.  See Grande v. St. Paul Fire & Marine Ins. Co., 436 F.3d 277, 283 (1st Cir. 2006).

But under federal precedent, governments in the past have not been subject to estoppel or, more recently, have been held not subject to estoppel, save exceptional situations that we have called "hen's-teeth rare," Costa v. INS, 233 F.3d 31, 38 (1st Cir. 2000).[2]  Various reasons have been given for excepting governments,

---

[2]See, e.g., Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 419-23 (1990); Schweiker v. Hansen, 450 U.S. 785, 788 (1981); Utah Power & Light Co. v. United States, 243 U.S. 389, 409 (1917);

e.g., Heckler v. Cmty. Health Serv., 467 U.S. 51, 65-66 (1984), but--like many such limitations in favor of the state--the explanation mingles history, doctrine (e.g., sovereign immunity; agency), and practical concerns. Cf. Kawananakoa v. Polyblank, 205 U.S. 349, 353 (1907) (Holmes, J.).

As with sovereign immunity, Congress has made exceptions but, in the case of estoppel, the exceptions are far narrower and more sporadic than the categorical limitations in the Federal Tort Claims Act, 28 U.S.C. § 2680 (2006).[3]  Possibly, the problem is harder to solve:  often, a claim of honest reliance is on one side of the scale and, on the other, justified concerns to assure enforcement of the law, about the lack of authority by officials to vary it, and about the prospect of spurious law suits.

The Supreme Court has been very cautious in language, and even more cautious in practice, about extending estoppel to the government.  It has said, but only in a dictum, that "affirmative misconduct" by the government can lead to estoppel, Heckler, 467 U.S. at 60, but most estoppel claims involve misstatements so the

Mimiya Hosp., 331 F.3d at 183 n.1; Phelps v. Fed. Emergency Mgmt. Agency, 785 F.2d 13, 16-17 (1st Cir. 1986); United States v. Ven-Fuel, Inc., 758 F.2d 741, 761 (1st Cir. 1985);  14 Wright, Miller & Cooper, Federal Practice & Procedure § 3652, at 245 & n.26 (3d ed. 1998 & Supp. 2009).

[3]See, e.g., Federal Trade Commission Act, 15 U.S.C. § 57b-4(b) (2006);  Truth in Lending Act, 15 U.S.C. § 1640(f);  Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1028.

quoted phrase, if read broadly, would wipe out the immunity; and, in practice, the Supreme Court has almost never estopped the government--outside of criminal cases or deportation.[4]

Tellingly, the Supreme Court's most recent pronouncement, in Richmond, is a step back from Heckler's dictum; in Richmond, the Supreme Court once again rejected a claim of estoppel against the government on the ground that it would undercut the policy of the statute in question. 496 U.S. at 424. Richmond's underlying rationale--the need for enforcement of the law--is basically the argument against allowing estoppel against the government. The law here is that Nagle did not have enough hours for FMLA leave.

This court, too, has not quite closed the door to exceptions but has repeatedly refused to apply estoppel against the government in ordinary situations where a private party would or might have been estopped.[5] In one case we used estoppel language in holding a statute of limitations tolled based on government representations. Ramirez-Carlo v. United States, 496 F.3d 41, 48-50 (1st Cir. 2007). But equitable tolling of statutes of limitation has long operated against the government, see Irwin v.

---

[4]Compare Richmond, 496 U.S. at 421-22; Heckler, 467 U.S. at 60; INS v. Miranda, 459 U.S. 14, 19 (1982) (per curiam), with United States v. Penn. Indus. Chem. Corp., 411 U.S. 655 (1973); Moser v. United States, 341 U.S. 41 (1951).

[5]Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 66-68 (1st Cir. 1999); Frillz, Inc. v. Lader, 104 F.3d 515, 518 (1st Cir. 1997); Phelps, 785 F.2d at 16-19; Ven-Fuel, 758 F.2d at 761.

Dep't of Veterans Affairs, 498 U.S. 89 (1990), and the case is largely a variation on that theme.

Statutes of limitation are a special case because allowing an out-of-time law suit does not create new substantive obligations but merely requires the government to defend a law suit that could have been timely brought. Such limitations do not require prejudice and are often described as "disfavored defense[s]." Ameel v. United States, 426 F.2d 1270, 1274 (6th Cir. 1970). Nagle's claim is not barred by a statute of limitations: she simply has no right to FMLA leave under the statute because she did not work the requisite number of hours.

Nagle's case is hardly unsympathetic. Her husband was sick and, by her account, she was several times assured by Frost that she could have FMLA leave. Justice Jackson, a model of humane good sense, made the classic argument in favor of estoppel where the citizen relies on official statements, Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 387 (1947) (Jackson, J., dissenting); but his opinion was in dissent. The core difficulty is that estoppel against the government poses real problems.

Governments have many "agents," who may or may not have authority to speak for the government in the matter at hand and whose casual representations are hard to control. Anyone can claim, without any confirming proof, that some official or clerk misinformed the person about his or her legal rights. Further, the

public has a general interest in having the same rules enforced against everyone; affording special treatment to someone who was misinformed creates special treatment, burdens on others or both.

Nagle is not asking to engage in prohibited conduct; this case is essentially about money. But, although the amount here is probably small, it could in other estoppel cases be very large; and small claims--many perhaps sympathetic--can add up to a great deal. As the Supreme Court explained in Richmond, 496 U.S. at 433:

> To open the door to estoppel claims would only invite endless litigation over both real and imagined claims of misinformation by disgruntled citizens, imposing an unpredictable drain on the public fisc. Even if most claims were rejected in the end, the burden of defending such estoppel claims would itself be substantial.

Richmond, although in tone a retreat from Heckler, repeats Heckler's earlier dictum about the need to show "affirmative misconduct"; but that phrase has usually been taken to mean something more than careless misstatements, see, e.g., Dantran, 171 F.3d at 67; Clason v. Johanns, 438 F.3d 868, 872 (8th Cir. 2006); Mukherjee v. INS, 793 F.2d 1006, 1008-09 (9th Cir. 1986), and nothing in Nagle's complaint suggests anything worse than uninformed reassurance on the part of a school official trying to be helpful to Nagle.

By her own account, Nagle has nothing in writing from Frost or other officials to confirm that any such representation was made to her. A prime danger in applying estoppel to the

-10-

government is the prospect of he said-she said trials as to whether an alleged oral statement was ever made. Heckler itself made this point. 467 U.S. at 65. A writing is far more likely to represent a considered opinion on the part of the official, rather than a casual comment, and is also more reasonably relied upon as an authoritative assertion.

Finally, assuming that Nagle did not know that she was far below the minimum hours needed for FMLA leave, Nagle plainly recognized some potential problem with her ability to get such leave: nothing else explains her actions. She also knew that she had nothing in writing: she wrote letters assertedly confirming oral statements that are otherwise undocumented and let matters lie even though no written confirmation was ever provided.

Some mechanism should exist for employees to get rulings on whether they are entitled to FMLA leave; and regulations under the existing statute, recently strengthened but after the events in this case, now require employers to provide written rulings on request. See 29 C.F.R. § 825.300(d) (2009). Neither side claims that the present regulation applies to this case, but the regime underscores the utility of insisting upon a writing and suggests that statutory or administrative solutions can be crafted.

If Richmond had come out the other way, Heckler's dictum might be taken to presage a new approach by the Court, entitling lower courts to develop the beachhead. That result would have its

attractions, laid out by Justice Jackson, although estoppel is a crude tool for making the needed policy choices and marking out limits. But allowing estoppel here would be tantamount to allowing it in the mine run of cases. Supreme Court precedent, and our own, forbid this course.

<u>Affirmed</u>.

**-Dissenting Opinion Follows-**

**LIPEZ**, **Circuit Judge**, dissenting.  The majority opinion follows a familiar path: it acknowledges the precedent permitting the use of estoppel against the government in exceptional circumstances, while rejecting its use in the case at hand.  It bases this outcome primarily on concerns that arise whenever the estoppel doctrine is invoked in a government context.  If the exception is not to be a false promise, however, it cannot be rejected for reasons that will be present in every case.  Moreover, Nagle's claim avoids some of the concerns typically associated with estoppel against the government.  Most importantly, her claim is compatible with government policy.  In addition, it is based on more than "casual representations."  Because these distinctive factors in combination place Nagle's claim outside the "mine run" of estoppel cases against the government, summary judgment is inappropriate.  I therefore respectfully dissent.

## I.

The problems related to the use of equitable estoppel against the government are real, and there is good reason to hesitate before applying the doctrine in that context.  An impact on the public fisc is virtually inevitable, even if the cost is only in defending estoppel claims.  See Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 433 (1990).  Similarly, given the number of officials at all levels of government engaged in informal conversations with the public, there is always a risk of excessive

-13-

litigation by disgruntled citizens "over both real and imagined claims of misinformation." See id. The majority also invokes the public's "general interest in having the same rules enforced against everyone." If Nagle is permitted to pursue estoppel against the government and prevails, she will receive "special treatment" – protection from an adverse employment action based on her leave – that other district employees with similar tenure will be denied.

I do not minimize the importance of these problems, particularly the potential financial drain on public funds. But if they provided reason enough to bar estoppel against the government, we would never recognize such a claim. Moreover, "special treatment" is the very premise of the estoppel doctrine: the plaintiff seeks a remedy for individualized harm caused by the defendant's misrepresentations. What matters is the nature of the special treatment at issue.

Attempts to avoid generally enforceable legal obligations are particularly troubling when they contravene important government policies represented by the laws at issue. Hence, we have repeatedly resisted plaintiffs' reliance on estoppel to escape obligations to which they would otherwise be subject by law. See, e.g., Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 66-67 (1st Cir. 1999) (denying use of estoppel to avoid penalties for payroll violations); Phelps v. Fed. Emergency Mgmt. Agency, 785 F.2d 13,

16-19 (1st Cir. 1986) (denying use of estoppel to avoid compliance with written proof-of-loss requirement for insurance claim); United States v. Ven-Fuel, Inc., 758 F.2d 741, 744-45, 761 (1st Cir. 1985) (denying use of estoppel to avoid penalties for violating oil import licensing regulations).

In Richmond, the Supreme Court similarly emphasized that the plaintiff sought to use estoppel to obtain a remedy – the payment of disability benefits – that would not only be "in direct contravention" of the statute on which his claim to relief rested but would also violate the Appropriations Clause of the Constitution. 496 U.S. at 424, 426. The Court firmly rejected estoppel as a basis for an award of funds from the federal treasury in light of the constitutional prohibition. See id. at 424 (quoting U.S. Const., Art. I, § 9, cl. 7, providing that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."); see also id. at 434 ("In this context there can be no estoppel, for courts cannot estop the Constitution.").[6]

Nagle's claim, however, does not fit this usual mold. Allowing her to invoke estoppel against the government would not undermine the policy of the act whose limitations she seeks to

---

[6]The Court in Richmond expressly left "for another day whether an estoppel claim could ever succeed against the Government" because "a narrower ground of decision is sufficient to address . . . a claim for payment of money from the Public Treasury contrary to a statutory appropriation." 496 U.S. at 423-24.

avoid. The Family Medical Leave Act ("FMLA") is designed, inter alia, to protect the continued employment of individuals – like Nagle – who need time away from their jobs to help family members confronting serious illnesses. See 29 U.S.C. § 2601(b)(2) (stating that the Act's purposes include entitling "employees to take reasonable leave for . . . the care of a child, spouse, or parent who has a serious health condition").[7] Although Nagle falls outside the category of employees to whom Congress guaranteed the protections of the FMLA, her estoppel claim would in no way compromise "the interest of the citizenry as a whole in obedience to the rule of law," Heckler v. Cmty. Health Servs., 467 U.S. 51, 60 (1984). Neither the FMLA nor the policy behind it bars the school district from going beyond the statute's scope to protect employees who have less tenure. See 29 U.S.C. § 2651(b) ("Nothing in [the FMLA] or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides

---

[7]The statute as a whole was designed to address "gender-based discrimination in the administration of leave benefits." Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 735 (2003); see also id. at 737 ("By setting a minimum standard of family leave for all eligible employees, irrespective of gender, the FMLA attacks the formerly state-sanctioned stereotype that only women are responsible for family caregiving, thereby reducing employers' incentives to engage in discrimination by basing hiring and promotion decisions on stereotypes."). The Act's "central provision guarantees eligible employees 12 weeks of leave in a 1-year period following certain events: a disabling health problem; a family member's serious illness; or the arrival of a new son or daughter." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002).

-16-

greater family or medical leave rights than the rights established under this Act or any amendment made by this Act."). Rather, allowing Nagle to pursue her claim <u>advances</u> the employee-protective policy sanctioned by Congress when it enacted the FMLA. <u>See</u> <u>Ragsdale</u>, 535 U.S. at 84 ("The Act encourages businesses to adopt more generous policies . . . .").[8]

The majority recognizes that the estoppel issue requires a balancing of competing interests, with the plaintiff's "claim of honest reliance" on one side of the scale and, on the other, the government's "justified concerns to assure enforcement of the law, about the lack of authority by officials to vary it, and about the prospect of spurious law suits." The majority fails to take into account, however, that the government's concerns have considerably less weight in cases where the estoppel would not undermine the public interest reflected by the law. <u>Cf.</u> <u>Ven-Fuel</u>, 758 F.2d at 761 ("The possibility of harm to a private party inherent in denying equitable estoppel . . . is often (if not always) grossly outweighed by the pressing public interest in the enforcement of congressionally mandated public policy.").

---

[8]I realize that the Congressional cutoff for FMLA eligibility – 1,250 hours worked in the preceding twelve months – is the product of a deliberate compromise that balances the needs of employees and their employers. <u>See</u> 29 U.S.C. § 2601(b)(3) (noting that the Act is designed to accomplish its purposes "in a manner that accommodates the legitimate interests of employers"). But the explicit provision allowing more generous benefits under state and local law forecloses an argument that allowing estoppel here would contravene the federal law.

-17-

In advising Nagle that she could take FMLA leave, the school district effectively told her that she would not be penalized for taking a family medical leave. She is thus seeking performance of a promise that her leave would not be factored into decisions about which employees to terminate. There would be nothing untoward about requiring the district to follow through on its assurances of FMLA-"type" protection – notwithstanding the statute's eligibility requirements – because no law or policy forecloses the district from making such a promise.[9]

Our precedent holding that estoppel against the government is "hen's-teeth rare," Costa v. INS, 233 F.3d 31, 38 (1st Cir. 2000), arises from the typical case: a plaintiff who seeks "an advantageous bargain unauthorized by law." Falcone, 864 F.2d at 229. It should indeed be the unusual case in which an individual is allowed to estop government officials from enforcing legislative enactments. It is most appropriate, however, to allow

---

[9]We have previously found a plaintiff's reliance on a government spokesman's representations to be unreasonable on the ground that "'those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.'" Falcone v. Pierce, 864 F.2d 226, 230-31 (1st Cir. 1988) (quoting Heckler, 467 U.S. at 63). Similarly, in Dantran, we held that "if a statute or regulation clearly limns a party's legal obligations, the party cannot justifiably rely for estoppel purposes on a government agent's representation that the law provides to the contrary." 171 F.3d at 67. That barrier to recovery is inapplicable here. Because FMLA-type benefits could be given to Nagle without violating the law, knowledge of the statute's eligibility requirement would not have foreclosed her reasonable belief that, based on Frost's assurances, she could take the leave without affecting her future employment.

an estoppel claim to go forward where the plaintiff seeks action consistent with the policy underlying the enactment.

## II.

Opening the door more widely to estoppel claims that are consistent with government policies will not trigger a flood of spurious lawsuits. That consistency will not be commonplace. Many low-stakes claims will never be brought because of the high cost of litigating them. In addition, as the majority points out, our case law already incorporates a limiting principle through the special requirement of affirmative misconduct. See Ramírez-Carlo v. United States, 496 F.3d 41, 49 (1st Cir. 2007). Even if that additional element presents a low barrier,[10] the burdens imposed by the standard elements of equitable estoppel also serve to discourage the filing of truly meritless claims. See Heckler, 467 U.S. at 61 ("[H]owever heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present."); Mimiya Hosp., Inc. v. U.S. Dep't of Health & Human Servs., 331 F.3d 178, 182 (1st Cir. 2003) (stating the

---

[10]We have said that "'[a]ffirmative misconduct . . . require[s] an affirmative misrepresentation or affirmative concealment of a material fact by the government, although it does not require that the government intend to mislead a party.'" Ramírez-Carlo, 496 F.3d at 49 (quoting Watkins v. U.S. Army, 875 F.2d 699, 707 (9th Cir. 1989) (en banc)). The repeated assurances that Nagle could take FMLA leave fit this description of "affirmative misrepresentation."

-19-

requirements of reasonable, detrimental reliance on a misrepresentation). Moreover, courts have a particular responsibility to hear the claims of citizens who have been wrongly treated by the government, and judges are capable of sorting out the meritorious filings from the frivolous ones in the early stages of litigation.

The Court in Richmond raised the specter of "endless litigation" as one of the "pernicious effects" that may result from "acceptance of estoppel claims for Government funds." 496 U.S. at 433. Richmond is far removed from the circumstances here. The Court was addressing claims against the federal government with constitutional implications, observing that "[i]t ignores reality to expect that the Government will be able to 'secure perfect performance from its hundreds of thousands of employees scattered throughout the continent.'" Id. (quoting Hansen v. Harris, 619 F.2d 942, 954 (2d Cir. 1980) (Friendly, J., dissenting), rev'd sub nom. Schweiker v. Hansen, 450 U.S. 785 (1981)). In a local context, however, the "practical concern[]" of excessive litigation carries far less weight.

In rejecting Nagle's attempt to rely on the estoppel doctrine, the majority emphasizes that she has no written confirmation of Deputy Superintendent Frost's assurances that she could take FMLA leave to care for her ailing husband. It observes that the absence of such evidence leads to the "prime danger" of

"he said-she said" trials resulting from casual comments. A wide spectrum of circumstances exist, however, between an explicit written confirmation and "casual representations" that might be insufficient, as a matter of law, to state a meritorious claim of estoppel against the government.

Nagle's case does not rest on offhand comments. She sent a thank-you letter for her FMLA leave, identifying it as such, to the very person who she claims made the representations on which she relies. In a large bureaucracy, there could be substantial doubt as to whether the intended recipient of such a letter would have in fact received it. In the context of a small governmental body like the school district, however, it is a fair inference that Frost received and read Nagle's correspondence. Cf. Ramírez-Carlo, 496 F.3d at 50 ("[A] reasonable fact finder could infer that the VA did, in fact, agree to the late submission from the letter's language that it was written 'to confirm [the parties'] negotiations and disposition,' from the lack of response from the VA to the contrary, and from the fact that the claim was ultimately settled."). In these circumstances, Nagle is entitled to have a factfinder decide whether a misrepresentation was made and if she reasonably relied on it to her detriment.

## III.

The permissible use of estoppel against the government remains an undeveloped and uncertain area of the law. The Supreme

Court in <u>Richmond</u> noted that it had "reversed every finding of estoppel that we have reviewed," despite "dicta in our more recent cases . . . suggest[ing] the possibility that there might be some situation in which estoppel against the Government could be appropriate." 496 U.S. at 414. Still, the Court refused to rule out the possibility. This case demonstrates the wisdom of that restraint because it presents the situation where estoppel against the government might be appropriate. The remedy sought does not violate federal law and, indeed, advances an important public policy; the claim implicates a small unit of local government rather than the federal system; and it relies on more than a casual representation by a government official. These considerations justify Nagle's invocation of the estoppel doctrine. I would therefore reverse the grant of summary judgment.