LIPEZ, Circuit Judge,
dissenting.
The majority opinion follows a familiar path: it acknowledges the precedent permitting the use of estoppel against the government in exceptional circumstances, while rejecting its use in the case at hand. It bases this outcome primarily on concerns that arise whenever the estoppel doctrine is invoked in a government context. If the exception is not to be a false promise, however, it cannot be rejected for reasons that will be present in every case. Moreover, Nagle’s claim avoids some of the concerns typically associated with estoppel against the government. Most importantly, her claim is compatible with government policy. In addition, it is based on more than “casual representations.” Because these distinctive factors in combination place Nagle’s claim outside the “mine run” of estoppel cases against the government, summary judgment is inappropriate. I therefore respectfully dissent.
I.
The problems related to the use of equitable estoppel against the government are real, and there is good reason to hesitate before applying the doctrine in that context. An impact on the public fisc is virtually inevitable, even if the cost is only in defending estoppel claims. See Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 433, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Similarly, given the number of officials at all levels of government engaged in informal conversations with the public, there is always a risk of excessive litigation by disgruntled citizens “over both real and imagined claims of misinformation.” See id. The majority also invokes the public’s “general interest in having the same rules enforced against everyone.” If Nagle is permitted to pursue estoppel against the government and prevails, she will receive “special treatment” — protection from an adverse employment action based on her leave — that other district employees with similar tenure will be denied.
I do not minimize the importance of these problems, particularly the potential financial drain on public funds. But if they provided reason enough to bar estoppel against the government, we would never recognize such a claim. Moreover, “special treatment” is the very premise of the estoppel doctrine: the plaintiff seeks a remedy for individualized harm caused by the defendant’s misrepresentations. What matters is the nature of the special treatment at issue.
*7 Attempts to avoid generally enforceable legal obligations are particularly troubling when they contravene important government policies represented by the laws at issue. Hence, we have repeatedly resisted plaintiffs’ reliance on estoppel to escape obligations to which they would otherwise be subject by law. See, e.g., Dantran, Inc. v. U.S. Deft of Labor, 171 F.3d 58, 66-67 (1st Cir.1999) (denying use of estoppel to avoid penalties for payroll violations); Phelps v. Fed. Emergency Mgmt. Agency, 785 F.2d 13, 16-19 (1st Cir.1986) (denying use of estoppel to avoid compliance with written proof-of-loss requirement for insurance claim); United States v. Ven-Fuel, Inc., 758 F.2d 741, 744-45, 761 (1st Cir.1985) (denying use of estoppel to avoid penalties for violating oil import licensing regulations).
In Richmond, the Supreme Court similarly emphasized that the plaintiff sought to use estoppel to obtain a remedy — the payment of disability benefits — that would not only be “in direct contravention” of the statute on which his claim to relief rested but would also violate the Appropriations Clause of the Constitution. 496 U.S. at 424, 426, 110 S.Ct. 2465. The Court firmly rejected estoppel as a basis for an award of funds from the federal treasury in light of the constitutional prohibition. See id. at 424, 110 S.Ct. 2465 (quoting U.S. Const., Art. I, § 9, cl. 7, providing that “No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law.”); see also id. at 434, 110 S.Ct. 2465 (“In this context there can be no estoppel, for courts cannot estop the Constitution.”).[6]
Nagle’s claim, however, does not fit this usual mold. Allowing her to invoke estoppel against the government would not undermine the policy of the act whose limitations she seeks to avoid. The Family Medical Leave Act (“FMLA”) is designed, inter alia, to protect the continued employment of individuals — like Nagle — who need time away from their jobs to help family members confronting serious illnesses. See 29 U.S.C. § 2601(b)(2) (stating that the Act’s purposes include entitling “employees to take reasonable leave for ... the care of a child, spouse, or parent who has a serious health condition”).[7] Although Nagle falls outside the category of employees to whom Congress guaranteed the protections of the FMLA, her estoppel claim would in no way compromise “the interest of the citizenry as a whole in obedience to the rule of law,” Heckler v. Cmty. Health Servs., 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). Neither the FMLA nor the policy behind it bars the school district from going beyond the statute’s scope to protect employees who have less *8 tenure. See 29 U.S.C. § 2651(b) (“Nothing in [the FMLA] or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act.”). Rather, allowing Nagle to pursue her claim advances the employee-protective policy sanctioned by Congress when it enacted the FMLA. See Ragsdale, 535 U.S. at 84, 122 S.Ct. 1155 (“The Act encourages businesses to adopt more generous policies.... ”).[8]
The majority recognizes that the estoppel issue requires a balancing of competing interests, with the plaintiffs “claim of honest reliance” on one side of the scale and, on the other, the government’s “justified concerns to assure enforcement of the law, about the lack of authority by officials to vary it, and about the prospect of spurious law suits.” The majority fails to take into account, however, that the government’s concerns have considerably less weight in cases where the estoppel would not undermine the public interest reflected by the law. Cf. Ven-Fuel, 758 F.2d at 761 (“The possibility of harm to a private party inherent in denying equitable estoppel ... is often (if not always) grossly outweighed by the pressing public interest in the enforcement of congressionally mandated public policy.”).
In advising Nagle that she could take FMLA leave, the school district effectively told her that she would not be penalized for taking a family medical leave. She is thus seeking performance of a promise that her leave would not be factored into decisions about which employees to terminate. There would be nothing untoward about requiring the district to follow through on its assurances of FMLA-“type” protection — notwithstanding the statute’s eligibility requirements — because no law or policy forecloses the district from making such a promise.[9]
Our precedent holding that estoppel against the government is “hen’s-teeth rare,” Costa v. INS, 233 F.3d 31, 38 (1st Cir.2000), arises from the typical case: a plaintiff who seeks “an advantageous bargain unauthorized by law.” Falcone, 864 F.2d at 229. It should indeed be the unusual case in which an individual is allowed to estop government officials from enforcing legislative enactments. It is most appropriate, however, to allow an estoppel claim to go forward where the plaintiff *9 seeks action consistent with the policy underlying the enactment.
II.
Opening the door more widely to estoppel claims that are consistent with government policies will not trigger a flood of spurious lawsuits. That consistency will not be commonplace. Many low-stakes claims will never be brought because of the high cost of litigating them. In addition, as the majority points out, our case law already incorporates a limiting principle through the special requirement of affirmative misconduct. See Ramírez-Carlo v. United States, 496 F.3d 41, 49 (1st Cir. 2007). Even if that additional element presents a low barrier,[10] the burdens imposed by the standard elements of equitable estoppel also serve to discourage the filing of truly meritless claims. See Heckler, 467 U.S. at 61, 104 S.Ct. 2218 (“[H]ow-ever heavy the burden might be when an' estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present.”); Mimiya Hosp., Inc. v. U.S. Dep’t of Health & Human Servs., 331 F.3d 178, 182 (1st Cir.2003) (stating the requirements of reasonable, detrimental reliance on a misrepresentation). Moreover, courts have a particular responsibility to hear the claims of citizens who have been wrongly treated by the government, and judges are capable of sorting out the meritorious filings from the frivolous ones in the early stages of litigation.
The Court in Richmond raised the specter of “endless litigation” as one of the “pernicious effects” that may result from “acceptance of estoppel claims for Government funds.” 496 U.S. at 433, 110 S.Ct. 2465. Richmond is far removed from the circumstances here. The Court was addressing claims against the federal government with constitutional implications, observing that “[i]t ignores reality to expect that the Government will be able to ‘secure perfect performance from its hundreds of thousands of employees scattered throughout the continent.’ ” Id. (quoting Hansen v. Harris, 619 F.2d 942, 954 (2d Cir.1980) (Friendly, J., dissenting), rev’d sub nom. Schweiker v. Hansen, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981)). In a local context, however, the “practical concern[]” of excessive litigation carries far less weight.
In rejecting Nagle’s attempt to rely on the estoppel doctrine, the majority emphasizes that she has no written confirmation of Deputy Superintendent Frost’s assurances that she could take FMLA leave to care for her ailing husband. It observes that the absence of such evidence leads to the “prime danger” of “he said-she said” trials resulting from casual comments. A wide spectrum of circumstances exist, however, between an explicit written confirmation and “casual representations” that might be insufficient, as a matter of law, to state a meritorious claim of estoppel against the government.
Nagle’s case does not rest on offhand comments. She sent a thank-you letter for her FMLA leave, identifying it as such, to the very person who she claims made the representations on which she relies. In a large bureaucracy, there could be *10 substantial doubt as to whether the intended recipient of such a letter would have in fact received it. In the context of a small governmental body like the school district, however, it is a fair inference that Frost received and read Nagle’s correspondence. Cf. Ramírez-Carlo, 496 F.3d at 50 (“[A] reasonable fact finder could infer that the YA did, in fact, agree to the late submission from the letter’s language that it was written ‘to confirm [the parties’] negotiations and disposition,’ from the lack of response from the VA to the contrary, and from the fact that the claim was ultimately settled.”). In these circumstances, Nagle is entitled to have a factfinder decide whether a misrepresentation was made and if she reasonably relied on it to her detriment.
III.
The permissible use of estoppel against the government remains an undeveloped and uncertain area of the law. The Supreme Court in Richmond noted that it had “reversed every finding of estoppel that we have reviewed,” despite “dicta in our more recent cases ... suggesting] the possibility that there might be some situation in which estoppel against the Government could be appropriate.” 496 U.S. at 414, 110 S.Ct. 2465. Still, the Court refused to rule out the possibility. This case demonstrates the wisdom of that restraint because it presents the situation where estoppel against the government might be appropriate. The remedy sought does not violate federal law and, indeed, advances an important public policy; the claim implicates a small unit of local government rather than the federal system; and it relies on more than a casual representation by a government official. These considerations justify Nagle’s invocation of the estoppel doctrine. I would therefore reverse the grant of summary judgment.

. The Court in Richmond expressly left "for another day whether an estoppel claim could ever succeed against the Government” because "a narrower ground of decision is sufficient to address ... a claim for payment of money from the Public Treasury contrary to a statutory appropriation.” 496 U.S. at 423-24, 110 S.Ct. 2465.

. The statute as a whole was designed to address "gender-based discrimination in the administration of leave benefits.” Nevada Dep’t of Human Res. v. Hibbs, 538 U.S. 721, 735, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003); see also id. at 737, 123 S.Ct. 1972 ("By setting a minimum standard of family leave for all eligible employees, irrespective of gender, the FMLA attacks the formerly state-sanctioned stereotype that only women are responsible for family caregiving, thereby reducing employers’ incentives to engage in discrimination by basing hiring and promotion decisions on stereotypes.”). The Act’s "central provision guarantees eligible employees 12 weeks of leave in a 1-year period following certain events: a disabling health problem; a family member's serious illness; or the arrival of a new son or daughter.” Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002).

. I realize that the Congressional cutoff for FMLA eligibility — 1,250 hours worked in the preceding twelve months — is the product of a deliberate compromise that balances the needs of employees and their employers. See 29 U.S.C. § 2601(b)(3) (noting that the Act is designed to accomplish its purposes "in a manner that accommodates the legitimate interests of employers”). But the explicit provision allowing more generous benefits under state and local law forecloses an argument that allowing estoppel here would contravene the federal law.

. We have previously found a plaintiff's reliance on a government spokesman's representations to be unreasonable on the ground that " 'those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.’ " Falcone v. Pierce, 864 F.2d 226, 230-31 (1st Cir.1988) (quoting Heckler, 467 U.S. at 63, 104 S.Ct. 2218). Similarly, in Dantran, we held that "if a statute or regulation clearly limns a party's legal obligations, the party cannot justifiably rely for estoppel purposes on a government agent’s representation that the law provides to the contrary.” 171 F.3d at 67. That barrier to recovery is inapplicable here. Because FMLA-type benefits could be given to Nagle without violating the law, knowledge of the statute's eligibility requirement would not have foreclosed her reasonable belief that, based on Frost’s assurances, she could take the leave without affecting her future employment.

. We have said that " '[a]ffirmative misconduct ... require[s] an affirmative misrepresentation or affirmative concealment of a material fact by the government, although it does not require that the government intend to mislead a party.’ ” Ramírez-Carlo, 496 F.3d at 49 (quoting Watkins v. U.S. Army, 875 F.2d 699, 707 (9th Cir.1989) (en banc)). The repeated assurances that Nagle could take FMLA leave fit this description of "affirmative misrepresentation.' ’